IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NOORANI TRADING, INC.,           :
                                 :
     Plaintiff,              :          CIVIL ACTION NO.
                                 :          1:17-CV-1344-LMM
                                 :
v.                               :
                                 :
                                 :
AMIT F. BIJANI, *et al.*,         :
                                 :
     Defendants.             :

## ORDER

This case comes before the Court on Defendants' Motion for Summary Judgment [147] and Motion to Strike [148], Plaintiff's Motion for Sanctions [149], and Defendants' Motion for Leave to File Sur-Reply [157]. After due consideration, the Court enters the following Order:

### I.   BACKGROUND

Plaintiff Noorani Trading, Inc. sued in this Court on April 14, 2017, claiming that Defendants infringed its trademark and the trade dress of its incense products. See Dkt. Nos. [1]. Plaintiff is a Georgia corporation that manufactures incense wands and air fresheners. See Dkt. No. [80] ¶¶ 7, 15, 18. It claims trademark rights in an oval mark containing the letters BLUNTEFFECTS and trade dress rights in the packaging of its incense, air fresheners, and air freshener display box. Id. ¶¶ 14, 18, 20, 24. Defendants Amit Bijani, Nafisa Bijani, AB International, and N.F. International (the "Bijani Defendants") are the

manufacturers of incense and air fresheners whose packaging Plaintiff claims infringes its own. Id. ¶ 37. Defendant Star Importers is a wholesaler who purchases products from the Bijani Defendants and sells the products to distributors. Id. ¶ 38.

On the same day Plaintiff filed suit, Plaintiff sought a temporary restraining order and preliminary injunction. Dkt. No. [2]. The Court held a hearing on Plaintiff's motion for temporary restraining order and preliminary injunction on April 28, 2017 and granted preliminary injunction on Plaintiff's trade dress claim on May 4, 2017. See Dkt Nos. [13], [16]. Defendants subsequently redesigned the packaging of their products.

Since then, the parties have conducted discovery and motions practice. On July 17, 2017, Plaintiff filed a motion to amend the Court's preliminary injunction to include additional trade dress and the modified version of Defendants' enjoined trade dress. Dkt. No. [35]. The Court held a hearing on that motion, and on August 16, 2017 granted the motion as to Defendants' air freshener display trade dress. Dkt. No. [54].

On December 1, 2017, Plaintiff filed its Second Amended Complaint with a demand for jury trial. Dkt. Nos. [80], [81]. Defendant moved to dismiss the Second Amended Complaint, and the Court denied that motion. Dkt. No. [86]. On April 8, 2019, Plaintiff moved to dismiss Defendant AB International's counterclaim, Dkt. No. [120], and the Court granted that motion on June 3, 2019. Dkt. No. [134].

On September 16, 2019, Defendants filed the Motion for Summary Judgment and Motion to Strike Plaintiff's Jury Demand that are now before the Court. See Dkt. Nos. [147], [148]. Defendants present affidavits from three of Plaintiff's former customers—Star Importers, Chicago Imports, and US 1 Novelties—in attempt to show that Defendants' alleged infringement did not cause Plaintiff to lose profits. See Dkt. No. [147] at 10. Defendants also argue, if Plaintiff's claim for lost profits fails, the Court should strike Plaintiff's jury demand because the "only remaining demands for relief are equitable in nature." Dkt. No. [148] at 2.

Plaintiff has filed a Motion for Sanctions against Defendants based on several discovery-related issues. See Dkt. No. [149]. And Defendants have moved the Court for leave to file a surreply to address arguments in Plaintiff's reply brief. See Dkt. No. [157].[1]

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[1] The Court has considered Defendants' surreply brief. The Court "may in its discretion permit the filing of a surreply." Frederick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). But the Court only does so "where a valid reason for such additional briefing exists." Id. Defendants suggest that Plaintiff's reply brief "contains a number of newly-presented" arguments. Dkt. No. [157-1] at 1. Because the Court gives no decisive weight to arguments presented for the first time in Plaintiff's reply brief, the Court finds Defendants' surreply brief generally unhelpful but will allow Defendants to file it. Defendants' request for leave to file a surreply is **GRANTED**.

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine

[dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

### B.   Sanctions

The Eleventh Circuit has "long acknowledged the broad discretion of the district court to impose sanctions." Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). Federal courts possess the inherent power to sanction bad-faith conduct in litigation. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991); United States ex rel. Bibby v. Wells Fargo Bank, N.A., No. 1:06–CV–0547–AT, 2015 WL 82037 (N.D. Ga. Jan. 5, 2015) (imposing $1.6 million sanction based upon the inherent authority of the court for violation of a court order). "[W]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." Peer v. Lewis, 606 F.3d 1306, 1315 (11th Cir. 2010) (quoting Shepherd v. Am. Broadcasting Cos., 62 F.3d 1469, 1474 (D.C. Cir. 1995)). In invoking its inherent power, a court must determine that bad faith exists. Chambers, 501 U.S. at 49-50; In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) ("[T]he key to unlocking a court's inherent power is a finding of bad faith."). A party demonstrates bad faith by "delaying or disrupting the litigation or by hampering enforcement of a court order." Chambers, 501 U.S. at 46; In re Sunshine, 456 F.3d at 1304.

"[F]ederal law governs the imposition of spoliation sanctions." Flury, 427 F.3d at 944. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009). "Sanctions for spoliation of evidence are intended 'to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.'" Oil Equipment Co. v. Modern Welding Co., 661 F. App'x 646, 652 (11th Cir. 2016).

To find spoliation, the Court looks at three primary factors: "the extent of prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." Id. And the Eleventh Circuit has listed five factors relevant to the sanctions question: "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." Flury, 427 F.3d at 945. Possible sanctions include a rebuttable presumption that the lost evidence was unfavorable to the spoliating party, a jury instruction, the exclusion of certain evidence, and default judgment. ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1307–09 (11th Cir. 2018). However, any award of fees and costs should be directly related to the spoliation motion and attributable to the spoliating party's misconduct.

Carter v. Butts Cty., 2016 WL 1274557, at *11 (M.D. Ga. Mar. 31, 2016); see also

Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1287 (M.D. Fla. 2009) ("[T]he amount

of fees and costs awarded may not exceed the costs, expenses, and attorneys' fees

reasonably incurred because of the sanctionable conduct." (quotation omitted

and alteration adopted)).

### III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

To address Defendants' Motion for Summary Judgment, the Court must

decide whether Plaintiff has produced evidence from which a reasonable jury

could infer that Plaintiff lost profits because of the Bijani Defendants' alleged

trademark and trade-dress infringement.[2] Defendants present affidavits in which

declarants speaking for three of Plaintiff's former customers say they would have

left Plaintiff, regardless of the Bijani Defendants' competition. See Dkt. Nos. [147-

4]–[147-9]. Defendants reason that the customers' alternative reasons to cut ties

with Plaintiff support Defendants' contention that the alleged infringement was

not the but-for cause of Plaintiff's lost profits.

### A.   Defendants' Three Affidavits

Defendants present affidavits to show that three of Plaintiff's former

customers would have cut ties with Plaintiff, regardless of the Bijani Defendants'

business activities. Defendants view these affidavits as "unimpeachable evidence

. . . that Noorani cannot establish" but-for causation. See Dkt. No. [147] at 2.

---

[2] The four Defendants that Plaintiff claims engaged in trademark and trade dress infringement were the "Bijani Defendants," which include Amit Bijani, Nafisa Bijani, AB International, and N.F. International. See Dkt. No. [80] ¶¶ 37, 39.

First, Defendants argue that Star Importers would have stopped buying Plaintiff's products, regardless of the Bijani Defendants' alleged infringement. See id. at 10. Defendants produce the affidavit of Star Importers's principal, Mr. Hudda, in which he says he would not have considered purchasing from Plaintiff "regardless of any purchases from [Defendant] AB International." Id. Mr. Hudda says Star Importers disfavored Plaintiff because Plaintiff tried to make Star Importers enter an exclusive distributorship agreement. Id. at 11. And Mr. Hudda enumerates other business-related complaints with Plaintiff, which involving issues like shipment speed, pricing, and customer service. Id. Mr. Hudda also lists alternative incense products that Star Importers sells to suggest that the Bijani Defendants' products were not the only alternative available when Star Importers left Plaintiff. Id

Similarly, Defendants argue that Chicago Imports would have ceased its business with Plaintiff, regardless of the Bijani Defendants' alleged infringement. See id. at 11. Defendants produce an affidavit from Chicago Imports's owner, Mr. Punjabi, in which Mr. Punjabi declares that Chicago Imports cut ties with Plaintiff for "numerous disputes" unrelated to its business with Defendant AB International. Id. at 12. Mr. Punjabi raises an identical complaint to Mr. Hudda's about Plaintiff's purported efforts to establish an exclusive distributorship agreement. Id. Mr. Punjabi also expresses dissatisfaction with Plaintiff's general business practices. Id. at 13. And, like Mr. Hudda, Mr. Punjabi lists alternative

incense brands that Chicago Imports purchased, so that it did not need to purchase Plaintiff's brand. Id. at 14.

Defendants further argue that US 1 Novelties would have left Plaintiff, regardless of the Bijani Defendants' activities. See id. at 14. The declarant in Defendants' third affidavit is the head of Defendant AB International, Mr. Bijani, who declares that he is "well acquainted with US 1 Novelties." Id. Mr. Bijani declares that Plaintiff proposed to US 1 a similar distributorship agreement to those Plaintiff proposed to Star Importers and Chicago Imports. Id. at 15. Mr. Bijani also reports that US 1 developed its own line of incense to sell instead of buying from Plaintiff. Id. Like the other two Defendants, US 1 Novelties evidently had alternative incense brands available to it, so that Plaintiff did not lose sales from the Bijani Defendants' alleged infringement. Id. at 15–16.

Given these affidavits, Defendants conclude that Plaintiff cannot meet its burden to show that the Bijani Defendants' alleged infringement was the but-for cause of Plaintiff's lost profits. See id. at 2. Defendants reason that the customers each cut ties from Noorani for reasons other than AB International's competition. Id. at 17. And Defendants argue they cannot have been the but-for cause of Plaintiff's losses because each of the customers had a menu of alternative vendors that might have lured it away from Plaintiff. Id.

## B.   Plaintiff's Evidence

Plaintiff presents evidence that contradicts Defendants' evidence on lost profits. Plaintiff provides declarations from an expert, Mr. Hoekstra, and from

Plaintiff's executive, Ms. Changani, which estimate Plaintiff's lost profits and suggest the Bijani Defendants caused Plaintiff to lose those profits.

Mr. Hoekstra produced a report in which he estimated Plaintiff's lost profits due to the loss of business from Start Importers, Chicago Imports, and U.S. 1 Novelties. See Dkt. No. [147-3]; see also Dkt. No. [155-5] (Hoekstra's declaration). He concluded that Plaintiff lost profits of $329,900 during the period from April 1, 2017 to April 30, 2019. See Dkt. No. [155-5] at 11. He arrived at $329,900 using Defendants' sales invoices during the time of alleged injury, Plaintiff's historical cost of goods sold, and Plaintiff's profit margin during 2017 and 2018. See id. at 10.

Plaintiff's president Ms. Changani offered a theory of causation. See Dkt. No. [155-9]. Ms. Changani claims that each of the three customers—Chicago Imports, Star Importers, and U.S. 1 Novelties—left Plaintiff because they discovered they could buy the allegedly infringing product on more favorable terms.

Ms. Changani declares that Mr. Punjabi, the representative from Chicago Imports, told her Chicago Imports was switching from Plaintiff's product to the Bijani Defendants' because the products were identical and because Defendant Amit Bijani allowed Chicago Imports to sell on consignment. Id. ¶ 12. Mr. Punjabi also said "he could get the [allegedly infringing] products at a lower price." Id. ¶ 14. Ms. Changani provides correspondence between Plaintiff and Chicago Imports that shows a history of disagreement over the price that Plaintiff

charged. See Dkt. Nos. [155-12]–[155-17]. She also claims she met with Mr. Punjabi at a trade show, where he bragged that he could get "an exact copy of [her] product," and that she needed "to match the price of Bluntlife if [she] wanted to stay in business, since they both looked so alike and he was selling Bluntlife since February 2017." Dkt. No. [155-9] ¶ 16. Based on Ms. Changani's testimony, the correspondence between Chicago Imports and Plaintiff, and Mr. Punjabi's statements to Ms. Changani, a reasonable jury could find that Chicago Imports cut ties with Plaintiff to buy the Bijani Defendants' allegedly infringing products.

Ms. Changani also declares that Star Importers stopped buying from Plaintiff because the Bijani Defendants' allegedly infringing product drew Star Importers away. Id. ¶ 28. She claims that Star Importers bought Plaintiff's products from the time Plaintiff was formed to 2017. Id. ¶ 23. During that time, Ms. Changani declares, Star Importers's orders were timely processed, and Plaintiff never required advanced payment. Id. ¶¶ 25–26. She claims that the sales history and sample orders, which she attached to her affidavit, undermine Defendants' argument that Star Importers cut ties with Plaintiff because of bad business practices and advance-payment requirements. See Dkt. Nos. [155-18], [155-19]. According to Ms. Changani, "[a]fter April 2017, Star never purchased product from Noorani again because ever since Star started selling Bluntlife, they did not want to buy Blunteffects because they both looked exactly the same, and Star could get Bluntlife at a cheaper price." Dkt. No. [155-9] ¶ 28. Based on Ms.

Changani's testimony, the sales history, and Star Importer's April 2017 decision to stop buying from Plaintiff, a reasonable jury could conclude that Star Importers stopped buying from Plaintiff because it started buying the allegedly infringing product.

Ms. Changani's declaration also addresses Plaintiff's lost business from U.S. 1 Novelties. Between 2016 and July 2017, Ms. Changani claims, U.S. 1 purchased "nearly $2,000,000 of product from [Plaintiff]." Id. ¶ 29. Ms. Changani presents a May 2017 email in which U.S. 1 noted to Ms. Changani that "a lower quality version" of her product had entered the market and that U.S. 1 "lost a lot of business to other wholesalers because [it] refuse[d] to sell inferior product." Dkt. No. [155-21]. Ms. Changani reports that after "July 2017, U.S. 1 Discounts never purchased product from Noorani again because ever since it started selling Bluntlife, they did not want to buy Blunteffects because they both looked exactly the same." Dkt. No. [155-9] ¶ 32. A reasonable jury could conclude from this evidence that U.S. 1 stopped buying from Plaintiff because it started buying the allegedly infringing product.

The Hoekstra expert report, Ms. Changani's testimony, sales records, and the correspondence between Plaintiff and its three former-customers create a genuine issue of material fact. At this stage, the Court must view the facts in the light most favorable to the non-movant (Plaintiff). See Johnson, 74 F.3d at 1090. In that light, the facts suggest that Plaintiff lost profits because its former customers stopped buying from Plaintiff and instead bought the allegedly

infringing products of the Bijani Defendants.[3]

## IV.  PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff moves for sanctions against Defendants on five issues: (1) improperly drafted verifications to Defendants' interrogatories; (2) missing sales information from the Bijani Defendants from October 27, 2017 to March 19, 2018; (3) missing cost-of-goods-sold information from the Bijani Defendants from 2019; (4) untimely sales and cost information from Star Importers; and (5) missing communications between the parties' Chinese manufacturer, Shenzhen Kindvast, and Mr. Bijani. See Dkt. No. [149-1]. Plaintiff also proposes what it considers appropriate sanctions for each of these claimed violations. See id. at 23–25.

### A.   Defendants' Verifications

Plaintiff contends that Defendants have failed to properly verify their interrogatory responses. Plaintiff raised this issue with the Court during a previous discovery conference, and the Court ordered Defendants to submit proper verifications, asking the Plaintiff's counsel to send defense counsel a

---

[3] Plaintiff also attacks Defendants' Motion for Summary Judgment for two procedural defects. First, Plaintiff argues that the affidavits are not affidavits at all because they were not sworn by an officer authorized to administer oaths and did not contain the alternative language provided by 28 U.S.C. § 1746. See Dkt. No. [155] at 6–7. Second, Plaintiff argues the statements were never exchanged during discovery, despite being responsive to Plaintiff's document requests, so they are prohibited at trial under the Court's Standing Order. See id. at 8–9. The Court acknowledges these issues but finds that Plaintiff has met its burden at the summary judgment stage, even with the contested statements, so it does not address the purported defects of those statements here.

proper verification so that it would be clear to Defendants what was requried. Dkt. No. [131]. Plaintiff's counsel complied by emailing Defendants an appropriate verification, see Dkt. No. [149-3] at 3, but Defendants still have not properly verified their interrogatory responses.

Accordingly, Defendants are **ORDERED** to submit within **14** days verifications in the form proposed by Plaintiff's counsel in his May 22, 2019 email, see Dkt. No. [149-3] at 3, or verifications with the exact language contained in 28 U.S.C. § 1746(2):

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature).

See 28 U.S.C. § 1746(2).[4] If Defendants do not comply with this Order, the Court will determine appropriate sanctions.

### B.   Missing Sales Information

Plaintiff next contends that the Bijani Defendants failed to provide sales information for the period from October 27, 2017 to March 19, 2018. Plaintiff has obtained handwritten sales information up to October 26, 2017 and computer-generated invoices from March 20, 2018. See Dkt. No. [149-1] at 4–5. But the sales invoices between those dates, Plaintiff contends, "Defendants admittedly destroyed." See id. at 6 (citing Dkt. No. [149-18] at 16).

---

[4] Plaintiff has emphasized that a verification executed with the statutory language would suffice. See Dkt. No. [156] at 5–6. The Court will allow Defendants to submit verifications with the above-quoted language.

The Court disagrees with Plaintiff's characterization of the facts. See Dkt. No. [149-18]. Ms. Bijani testified that she could not find the relevant invoices. See Dkt. No. [149-17] at 13 ("My son asked me that the lawyer needs some handwritten invoices, and then I went to find them. I couldn't find them."). Mr. Bijani testified the same. See id. at 10 ("That, my mom had, and I don't know anything about them.") And Mr. Bijani also testified that his usual practice was to throw handwritten notes away after customers had paid. See id. at 15 ("I just throw that—okay. So I just destroy that paper. I throw it in the waste paper, the waste basket, and I don't want to get confused.").

But the Bijanis' having lost the relevant invoices paired with Mr. Bijani's usual practice of throwing invoices away does not mean that the sales notes during the relevant period were deliberately destroyed. After all, the Bijanis produced handwritten sales invoices from March 30, 2017 to October 26, 2017. Dkt. No. [149-1] at 4. And Mr. Bijani testified that the missing invoices were from the period when his company was transitioning from handwritten notes to a computer system. See Dkt. No. [149-18] at 10 ("I just start to put it in the computer. That way we have, you know, a lot more customers and it was difficult to remember everything. So that's why I didn't put it in the computer. I was learning the software computer as well."). The handwritten notes could well have been lost during the transition.

Even so, the missing information was for sales made after the April 14, 2017 filing of this action and even after Plaintiff's June 2017 discovery requests.

See Dkt. No. [149-1] at 6. Defendants do not dispute that "the missing evidence existed at one time." In re Delta/AirTran Baggage Fee Antitrust Litigation, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). They admit only that they lost it.

In the Eleventh Circuit, "[s]poliation is the destruction . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." See Graff, 310 F. App'x at 301 (citing West, 167 F.3d at 779). To address spoliation, courts examine "the extent of prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." Oil Equipment Co., 661 F. App'x at 652. Five factors relevant to the Court's analysis are "(1) whether [Plaintiff] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether [Defendants] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." Flury, 427 F.3d at 945.

Here, Defendants "had a duty to preserve the evidence." In re Delta, 770 F. Supp. 2d at 1305. Their sales records were directly in issue from the time of the April 2017 complaint. See Dkt. No. [1] ¶ 37 ("Defendants have used and are using in commerce the Infringing Mark and the Trade Dress in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff."). And Defendants' production of their existing sales records at their deposition shows they knew that Plaintiff sought that information for its case. In other words, Defendants

could have had a business practice to destroy their invoices, but Plaintiff's filing of this case changed Defendants' right to destroy important evidence without possible sanction. Defendants had a legal duty to keep this evidence, which they violated.

Also, Defendants' sales invoices are "crucial to Plaintiff's being able to prove [its] prima facie case" because Plaintiff must show Defendants' sales of allegedly infringing articles. In re Delta, 770 F. Supp. 2d at 1305. The subpoenaed bank statements from Bank of America (which Plaintiff has) show how much AB International made during the relevant period, but not which product sales generated that income. Without the sales invoices, Plaintiff will suffer prejudice because it cannot distinguish the sales of allegedly infringing products from the rest of Defendants' revenue for the relevant period. This prejudice cannot be cured without the missing records because the handwritten notes were Defendants' only record of their product breakdown and customers.

However, even where Plaintiff has proven that Defendants destroyed critical evidence while they had a duty to preserve it, a party's failure to preserve evidence rises to the level of sanctionable spoliation "only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). "While [the Eleventh Circuit] does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." Id.

Plaintiff cites two district courts that have found bad faith in similar circumstances. In <u>Kraft Reinsurance v. Pallets Acquisitions</u>, a Northern District of Georgia judge found bad faith in a "reckless disregard for potential prejudice to the opposing party." 843 F. Supp. 2d 1318, 1327 (N.D. Ga. 2011). And in <u>Swofford v. Eslinger</u>, a Middle District of Florida judge found bad faith in a "knowing and willful disregard for the clear obligation to preserve evidence that was solely within the possession and control of the Defendants and whose contents have no other source than that which has now been spoliated." 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009).

Plaintiff argues that the Bijani Defendants' failure to preserve key evidence shows more than negligence; it demonstrates the Defendants' bad faith. <u>See</u> Dkt. No. [149-1] at 20. Defendants respond by arguing that "Mr. Bijani has no substantial computer skills, and does business via his cell telephone and in-person. His record-keeping system is a cardboard box. The one-man company, AB, is not IBM. There is no bad faith here." Dkt No. [152] at 13. Defendants also insist the general ledgers they produced and the bank records that Plaintiff subpoenaed are adequate in place of the handwritten sales records. <u>Id.</u> at 14.

The Court agrees with Plaintiff. Defendants' failure to preserve key records shows more than "mere negligence." <u>Bashir</u>, 119 F.3d at 931. It shows bad faith. Defendants lost or destroyed five months of sales records during the pendency of this litigation, including records of sales of allegedly infringing products—records responsive to Plaintiff's discovery requests. Defendants' after-the-fact argument

that Mr. Bijani lacks computer skills does not justify this failure, since he testified that he kept the relevant records by hand. And as previously discussed, the handwritten notes are not duplicative because the subpoenaed bank records do not show Defendants' customers and product-breakdown. Whether, as Plaintiff contends, Mr. Bijani deliberately destroyed the records, or he failed to preserve them for discovery, he knew these records were relevant to this litigation and that their loss would prejudice Plaintiff. His failure to preserve them shows at least a "reckless disregard for potential prejudice to the opposing party." Kraft Reins., 843 F. Supp. at 1327.

Accordingly, the Court finds that Defendants' failure to preserve and produce this evidence is sanctionable. As for the appropriate sanction, the Court will instruct the jury that certain facts are established that directly relate to the subject of the spoliated documents. The Court does not currently have sufficient briefing from the parties as to how this instruction should read. Accordingly, Plaintiff is **ORDERED** to provide to the Court its suggested instruction and the reasoning behind it within **7** days of the entry of this Order. Defendants will then have **7** days to respond and to provide their suggested language.

### C.   Missing Cost-of-Goods-Sold Information

Plaintiff next argues the Bijani Defendants failed to provide "necessary detail to estimate the incremental costs of each specific product at issue in this case." See Dkt. No. [149-1] at 8. Plaintiff claims its expert could not calculate lost profits without this information. See Dkt. No. [149-1] at 8–9. Defendants respond

that the general ledgers (2016–2018), bank account records, and tax returns presently in Plaintiff's possession should be sufficient to determine cost of goods sold. See Dkt. No. [152] at 10. They contend "AB knows of no other such records kept in the ordinary course," and that their accountant relies upon the documents already produced to calculate cost of goods sold. See id. at 10–11.

The Court is satisfied with Defendants' production, since they claim to have produced everything they have. The Court also notes, as does Plaintiff, Dkt. No. [156] at 9, that Defendants "must prove all elements of cost or deduction claimed," while "the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). Because Plaintiff bears the burden of proving only Defendants' sales, Plaintiff will suffer little prejudice without Defendants' costs of goods sold. Accordingly, the Court **DENIES** Plaintiff's request for sanctions on the cost-of-goods-sold issue. If Plaintiff uncovers additional information that documents relating to this issue were destroyed after Defendants had notice of this litigation, the Court will reconsider this ruling.

### D.   Sales and Cost Information from Star Importers

Plaintiff next asks for sanctions based on Defendant Star Importers's failure to produce its sales invoices and costs until after Mr. Hudda's deposition. See Dkt. No. [149-1] at 9–10. Defense counsel represented to the Court that "Star does not keep any separate records of the sales of the accused 'Bluntlife' incense and air freshener products." Dkt. No. [126] at 5. But Mr. Hudda himself testified in his deposition that he did keep those records. See Dkt. No. [149-19] at 17. After

the deposition, but on the same day, Star Importers produced a large box of documents, including sales invoices for payments made to Defendants. <u>See</u> Dkt. No. [149-1] at 11. And this deposition took place after Defendants had represented to the Court "that, after a secondary search, Defendants have provided to Plaintiff all such documents that are in their possession, custody, and control." Dkt. No. [129].

Defendants do not contest Plaintiff's contention. <u>See</u> Dkt. No. [152] at 11. Instead, they justify their failure to produce relevant documents by explaining that defense counsel's office is a shared office, and that the large box was misplaced in a shared storage room. <u>See</u> <u>id.</u> Even if this was an "honest mistake," <u>id.</u>, it was also a lapse that directly prejudiced Plaintiff by preventing it from cross-examining a defendant with the benefit of documentary evidence.

This conduct is sanctionable under the Federal Rules of Civil Procedure because Defendants certified to this Court on May 10, 2019, pursuant to the Court's order, that they had produced all available documents after a secondary search, <u>see</u> Dkt. No. [129], but that was not true. <u>See</u> Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."). In fact, Star Importers delayed until after Mr. Hudda's deposition on August 16, 2019 to turn over its documents. They did so in contravention of this Court's May 2, 2019 order. <u>See</u> Dkt. No. [125].

Accordingly, the Court **GRANTS** Plaintiff's request for a new deposition of Mr. Hudda, and for the fees and expenses associated with taking that deposition. This remedy will compensate Plaintiff for its lack of access to Star Importers's documents during Mr. Hudda's first deposition. However, the Court **DENIES** Plaintiff's request for reimbursement of the first deposition, since Plaintiff had the full benefit of that deposition minus the discoverable information. And the Court **DENIES** Plaintiff's request for the fees and expenses of reviewing Star Importers's documents, since Plaintiff would have to do so regardless of Defendant's discovery failures.

### E.    Missing Communications with Chinese Manufacturer

Last, Plaintiff requests sanctions based on Defendants' failure to preserve and produce electronic communications between Mr. Bijani and Shenzhen Kindvast, the Chinese manufacturer of both sides' products. See Dkt. No. [149-1] at 12. Plaintiff contends that Mr. Bijani deleted texts and emails between him and Shenzhen from before this litigation and from during and after Defendants' redesign of the packaging that the Court enjoined. See id.; see also Dkt. No. [156] at 11.

Plaintiff asks for sanctions to remedy this conduct under a theory spoliation. See Dkt. No. [149-1] at 15–17, 20. However, the Court's assessment of sanctions in this context is controlled primarily by Federal Rule of Civil Procedure 37(e). Rule 37(e) addresses the failure to preserve electronically stored information and reads as follows:

**(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice, or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> **(A)** presume that the lost information was unfavorable to the party;
>>
>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). In a case where electronically stored information that should have been preserved is lost, Rule 37(e) "authorizes and specifies measures a court may employ . . . and specifies the findings necessary to justify these measures." Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment. "It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used." Id. A party breaches Rule 37(e) when "the lost information should have been preserved in the anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it." Id. The duty to preserve "is based on [a] common-law duty." Id.

The Court therefore considers whether Defendant Bijani failed to preserve electronically stored information that he should have preserved under Rule 37(e).

First, the Court considers whether the information should have been preserved in the conduct of litigation by applying the test for a common-law duty to preserve. Next, the Court considers whether the information was lost because Mr. Bijani failed to take reasonable steps to preserve the information. Then, the Court considers whether the information can be restored or replaced with additional discovery. And last, the Court determines whether Plaintiff will suffer prejudice due to the loss of the destroyed communications.

In the Eleventh Circuit, spoliation is defined as the destruction or "failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff, 310 F. App'x at 301. [5] The duty to preserve is therefore triggered when litigation "is pending" or when it is "reasonably foreseeable." Id.; see also Ala. Aircraft Indus., Inc. v. Boeing Co., 319 F.R.D. 730, 740 (N.D. Ala. 2017). And Rule 37 instruct courts to "consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. 37(e) Advisory Committee's notes to 2015 amendment.

---

[5] Rule 37(e) supplants the Court's inherent authority to assess sanctions and state law considerations when a party deletes electronically stored information. See Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment. But existing common-law rules on spoliation are relevant to determine when a party's duty arises to preserve electronic information and what reasonable steps they must take to preserve that information. See, e.g., id. ("[T]he rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation[.]"). The Court therefore consults Eleventh Circuit precedent on the closely related topic of spoliation sanctions to inform its Rule 37(e) analysis.

Here, Defendant Bijani deleted communications between him and his Chinese manufacturer about a redesign that was ordered by this Court during pending litigation. There is no question about whether he could anticipate litigation because litigation was ongoing. And he was on notice of the relevance of the deleted emails both because the Court ordered the redesign that required him to send the emails and because Plaintiff claims Defendants sought out Shenzhen Kindvast to copy Plaintiff's mark and packaging, putting Defendants' relationship with Shenzhen directly in issue. See Dkt. No. [80] ¶ 40. Mr. Bijani had a duty to preserve the emails and failed to do so.[6]

Mr. Bijani also failed to take reasonable steps to preserve the emails. Rule 37(e) "only applies if the information was lost because the party failed to take reasonable steps to preserve the information." Fed. R. Civ. P. 37(e) Advisory Committee's note on 2015 amendment. Here, Mr. Bijani intentionally deleted the relevant emails. Plaintiff's subpoenaed records from Google show the many emails between Mr. Bijani and Shenzhen Kindvast that Mr. Bijani destroyed. See Dkt. No. [149-25]. Defendants do not address the Google documents, but rather argue that Mr. Bijani is not tech savvy, that Plaintiff's reference to deleted emails

---

[6] This finding only applies to the post-injunction emails. Mr. Bijani's failure to retain emails from the pre-litigation packaging design with Shenzhen deserves no sanction: before this litigation began, Mr. Bijani's duty to preserve had not yet attached. See Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment ("The rule does not apply when information is lost before a duty to preserve arises."). And Plaintiff has not shown that Mr. Bijani deleted these pre-litigation emails while he did have a duty to retain them.

is "pure speculation," that "whether emails had been deleted is irrelevant, absent a showing that emails material to an issue in this case were involved," and that Defendants' former counsel will testify that the redesign was clear of infringement. See Dkt. No. [152] at 12. None of this justifies Mr. Bijani's deletion of emails directly relevant to the subject matter of this case between Mr. Bijani, a key defendant, and his China-based supplier who manufactured the allegedly infringing goods.

It is not clear at this point whether the deleted emails can be recovered. Plaintiff suggests they cannot, see Dkt. No. [149-1], and Defendants have not argued that they can. If Defendants believe the emails can be recovered, they should address that issue in the briefing that the Court requests below (addressing the proper sanction for the deleted emails).

Finally, the Court finds Mr. Bijani's deletion of emails between him and Shenzhen Kindvast will prejudice Plaintiff. Rule 37(e)(1) provides that, "upon finding prejudice to another party from loss of the information, [the Court] may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The deleted emails could have provided Plaintiff critical information about the relationship between Defendants and the parties' mutual supplier. Because Shenzhen Kindvast is based in China, Mr. Bijani's deletion of the emails severed a key evidentiary link between the Bijani Defendants and a critical non-party to this case, the manufacturer that supplied product to both Plaintiff and the Bijani Defendants, including the products alleged to be infringing. Mr.

Bijani's deletions will negatively impact Plaintiff's case, so the failure to preserve the emails prejudiced Plaintiff. The prejudice is incurable unless Defendants show they can recover the emails, and since they have not yet produced them, the Court assumes for now that they cannot.

Plaintiff requests stipulations for Mr. Bijani's failure to preserve the electronic communications between him and Shenzhen Kindvast: a stipulation that the Bijani Defendants intended to trade on Plaintiff's goodwill, and two findings: (1) that the Bijani Defendants ascertained the identity of Plaintiff's manufacturer, Shenzhen, and (2) that the Bijani Defendants then sent to Shenzhen Plaintiff's trademark and trade dresses to copy. See Dkt. No. [149-1] at 23–24.

The Court finds that Plaintiff's proposed sanctions do not match the discovery failure here. Plaintiff's proposed sanctions relate to Mr. Bijani's pre-litigation deletions when he was under no duty to preserve his emails. Sanctions based on that conduct would be "measures . . . greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Accordingly, the Court finds that Defendants' failure to preserve and produce electronic communications between them and Shenzhen Kindvast is sanctionable, but the Court does not currently have sufficient briefing on the appropriate sanction. Plaintiff is **ORDERED** to provide to the Court its suggested sanction and the reasoning behind it within 7 days of the entry of this Order. Defendants will then have 7 days to respond.

## V.   CONCLUSION

Based upon the foregoing, Defendants' Motion for Summary Judgment [147] and Motion to Strike [148] are **DENIED**. Defendant's Motion for Leave to File Sur-Reply [157] is **GRANTED**.

Plaintiff's Motion for Sanctions [149] is **GRANTED in part** and **DENIED in part**. Defendants are **ORDERED** to submit within **14** days verifications that match the form in Plaintiff's May 22, 2019 email or the exact language in 28 U.S.C. § 1746(2). Defendant Star Importers and its representative Mr. Hudda are further **ORDERED** to appear at a deposition and to pay Plaintiff's fees and expenses associated with that deposition. Plaintiff's request for sanctions on cost-of-goods-sold discovery, reimbursement for Mr. Hudda's first deposition, and fees and expenses associated with reviewing Star Importers's documents are **DENIED**.

Plaintiff is **ORDERED** to submit within **7** days of this Order a written brief addressing (1) an appropriate instruction for the missing invoices from October 27, 2017 to March 19, 2018, and (2) appropriate sanctions for Mr. Bijani's deletion of emails during the pendency of litigation between him and Shenzhen Kindvast. Defendants will then have **7** days to respond. These briefs are an opportunity to address what sanctions should be assessed, not whether they should be assessed. The Court admonishes the parties to tailor proposed sanctions to the nature and magnitude of Defendants' discovery failures.

**IT IS SO ORDERED** this 5th day of December, 2019.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE