IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NOORANI TRADING, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:17-CV-1344-LMM |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIT F. BIJANI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

In the Court's Order of April 15, 2020, the Court directed the parties to address three issues. Dkt. No. [168]. First, the Court ordered the parties to brief appropriate sanctions for Defendants' deletion of electronic communications between Defendant Amit Bijani and the Bijani Defendants' Chinese supplier, Shenzhen Kindvast. Second, the Court granted Plaintiff's request for additional discovery and asked Plaintiff to develop a written protocol for forensic imaging of Defendants' electronic devices. Third, the Court granted Plaintiff's request for attorney's fees arising from its motion for sanctions and asked Plaintiff to submit documentation of its fees to which Defendants were permitted to object. The parties have now fully briefed these issues.

**I.   SANCTIONS FOR DELETION OF ELECTRONIC COMMUNICATIONS**

In its order of December 5, 2019, the Court found sanctionable Defendant Amit Bijani's deletion of electronic communications between him and the Bijanis'

Chinese supplier, Shenzhen Kindvast, which manufactured Defendants' allegedly infringing packaging materials. Dkt. No. [162]. The Court held those deletions sanctionable because the communications should have been preserved, were not preserved, were not apparently recoverable, and their deletion would prejudice Plaintiff. Id. at 24–27 (citing Fed. R. Civ. P. 37(e)(1)). Based on this finding, Plaintiff proposed in follow-up briefing that the Court give an adverse inference jury instruction under Fed. R. Civ. P. 37(e)(2). Dkt. No. [163] at 5.

The Court rejected Plaintiff's request for an adverse inference instruction. Dkt. No. [168] at 9. The Court noted that the Eleventh Circuit only permits an adverse inference instruction under Rule 37 when "the spoliating party 'acted with the intent to deprive another party of the information's use in the litigation.'" ML Healthcare Servs., LLC v. Publix Super Mkts., Inc., 881 F.3d 1293, 1308 (11th Cir. 2018) (quoting Fed. R. Civ. P. 37(e)(2)). Because the Court did not find that Defendant Bijani acted with the intent to deprive Plaintiff of the communications, the Court held that an adverse inference instruction was not appropriate. Dkt. No. [168] at 8–9. However, the Court allowed Plaintiff to propose different sanctions because it was concerned that rejecting Plaintiff's proposed instruction would provide Plaintiff with no remedy for Defendants' sanctionable deletions. Id.

Plaintiff has provided an updated request for sanctions. Dkt. No. [169]. Plaintiff reiterates its request for an adverse inference instruction by arguing that an adverse inference is appropriate under the Eleventh Circuit's multi-factor test

2

in Flury v. Daimler Chrysler Corp. Id. at 2–3 (citing Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005)). Plaintiff also argues that Defendants did intentionally deprive Plaintiff of electronic communications, so that the Court could award sanctions under Rule 37(e)(2), which permits adverse inference instructions. Id. at 4. But Plaintiff also proposes appropriate sanctions under Rule 37(e)(1), in case the Court does not find that Defendant Bijani deleted electronic communications with the intent to deprive Defendants of their use in litigation. Id. at 11.

Defendants respond by arguing that no sanction is warranted for their deletions of electronic communications. Dkt. No. [171]. Defendants note that the records of deleted communications that Plaintiff subpoenaed from Google contain communications that took place several months after Defendants had already completed a Court-ordered redesign of their packaging. Id. at 2. Based on this timing, Defendants argue that the deleted emails could not have dealt with the redesign at all and are therefore irrelevant. Id. at 2–3.[1]

---

[1] Defendants have repeated this argument at various stages. The Court rejects it. Even if the e-mails subpoenaed from Google post-dated the packaging redesign, they are still relevant. Defendant Amit Bijani testified in his deposition that he had earlier electronic communications with Shenzhen Kindvast regarding the original design and the packaging redesign. Dkt. No. [149-18] at 22 ("Like we have a text conversation first. So when they made the box, they took a picture and they sent it to me. . . . In a text message."); id. at 26 ("[T]hey took a picture and send it to me."). These earlier communications have not been produced. The e-mail records subpoenaed from Google prove that Defendant Bijani deleted relevant communications, but they do not foreclose the possibility of other relevant communications, as Defendant Bijani's deposition shows.

The Court has already found sanctionable Defendants' deletion of electronic communications. Dkt. No. [162]. The Court will not revisit that holding here. Nor will the Court revisit the basis for that holding, as Plaintiff requests, by applying the spoliations test from <u>Flury</u>. As the Court has already noted, <u>id.</u> at 24 n.5, the advisory committee's note to the 2015 amendment to Rule 37(e) provides that Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment; <u>O'Berry v. Turner</u>, 2016 WL 1700403, at *3 (M.D. Ga. Apr. 27, 2016) (noting the same). The Court therefore assessed sanctions under Rule 37 and found that awarding sanctions under 37(e)(1) was most appropriate based on the record. Dkt. No. [162] at 27.

The Court also declines Plaintiff's invitation to assess sanctions under 37(e)(2) by finding that Defendant Bijani deleted the electronic communications with the intent to deprive Plaintiff of that information. While Mr. Bijani deleted the communications despite notice that they were relevant to the lawsuit, the evidence reflects that he did so consistent with his normal practice of deletions in the course of business, not to deprive Plaintiff of their use in litigation. Dkt. No. [149-18] at 28 ("Like I usually delete my e-mails after three or six months

---

And even the post-redesign emails were important to this litigation. It is undisputed that Shenzhen Kindvast manufactured the Bijani Defendants' allegedly infringing products. Mr. Bijani testified that he discussed the packaging design with Shenzhen Kindvast electronically. <u>Id.</u> at 22–23. These communications may have a high degree of probative value to Plaintiff's case.

because I get like thousands of e-mail."). This misstep, while wrongful, does not support an adverse inference instruction. Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment (noting that "[n]egligent or even grossly negligent behavior does not logically support" an adverse-inference instruction); see also id. ("The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction."). Plaintiff has produced no evidence to the contrary.

The Court therefore considers Plaintiff's two suggested sanctions under Rule 37(e)(1). Dkt. No. [169] at 11 (citing O'Berry v. Turner, 2016 WL 1700403, at *3). First, Plaintiff proposes that the Court preclude Defendants from introducing evidence about its communications with Shenzhen Kindvast concerning the packaging designs at issue. Id. That "would include any self-serving oral testimony from Ms. Bijani or Mr. Bijani regarding their intent on the design with Shenzhen Kindvast." Id. Second, Plaintiff proposes that the Court preclude David Lilenfeld, Defendants' former attorney, from testifying at trial. Id.

Defendants contest Plaintiff's proposal to preclude Defendants from offering evidence on their intent for the packaging design because the deleted emails subpoenaed from Google were dated after the redesign was completed. Dkt. No. [171] at 3. The Court rejects this argument for reasons already discussed.

Defendants also contest Plaintiff's proposal to preclude Mr. Lilenfeld from testifying. Id. at 3–4. Defendants submit that Mr. Lilenfeld gave an oral opinion that Defendants' redesigned packaging did not infringe Plaintiff's products. They identified Mr. Lilenfeld and noted his opinion in response to one of Plaintiff's interrogatories. Id. at 4. Defendants argue that the Court should permit Mr. Lilenfeld to testify because he can provide probative evidence that will allow the jury to decide this case on the merits. Id.

The Court may impose sanctions no greater than necessary to cure the prejudice to Plaintiff. Fed. R. Civ. P. 37(e)(1). Here, the prejudice to Plaintiff is that it cannot know who was principally responsible for designing Defendants' allegedly infringing packaging—Defendants or Shenzhen Kindvast. Defendants have argued that Shenzhen Kindvast was responsible for the packaging designs, but Plaintiff disagrees, arguing that Defendants intentionally infringed its marks. These communications may also disclose the reasons for certain packaging decisions. Since Defendants have failed to produce or have destroyed relevant communications that may have settled this dispute, Plaintiff's case will suffer as a result.

Given this prejudice to Plaintiff, the Court will preclude Defendants from offering testimony about the content of their communications with Shenzhen Kindvast. This sanction will prevent Defendants from capitalizing on the uncertainty that they created by deleting electronic communications with an important third party.

6

The Court will reserve judgment on whether to admit Mr. Lilenfeld's testimony until the record is more fully developed at some point closer to trial. The Court will not permit Mr. Lilenfeld to testify about the substance of Defendants' deleted communications with Shenzhen Kindvast for the reasons discussed. That said, there may be legitimate testimony that Mr. Lilenfeld can provide that does not involve the deleted communications. If that is so, the Court will consider whether to allow such testimony when it has a clearer picture of what that testimony might be and whether it encompasses areas outside these specific communications.

## II.   FORENSIC IMAGING DISCOVERY PROTOCOL

In its Order of April 15, 2020, the Court granted Plaintiff's request for additional discovery in the form of electronic imaging of Defendants' devices. Dkt. No. [168]. The Court reasoned that this additional discovery was necessary due to Defendants' failure to preserve and produce evidence properly sought by Plaintiff. Id. at 10.

Defendants have often failed to meet their discovery obligations or otherwise created discovery issues throughout this litigation. Plaintiff served initial written discovery requests to Defendants on June 15, 2017, but Defendants did not serve any documents in response until November 8, 2017. After Defendants filed a Motion to Dismiss on December 15, 2017, they refused to further participate in discovery until the motion was resolved, though Defendants had already answered the Amended Complaint on August 8, 2017. Dkt. No. [85];

see also LR 26.2(A) (stating that discovery commences 30 days after the first defendant answers). The Court instructed Defendants to participate in discovery on January 22, 2018. Id. This delay resulted in another sixty-day extension of discovery. Dkt. No. [87]. After that, the Court twice granted stays of discovery before referring the case to a magistrate judge for mediation on July 9, 2018. Dkt. Nos. [91–94].

The parties reached an impasse after two sessions of mediation on October 12, 2018 and January 2, 2019. Dkt. Nos. [98, 99]. After a highly contentious round of briefing, the Court held a hearing on March 8, 2019 to address the unprofessional tone of the briefs. The Court then allowed Defendants to file an out-of-time answer to the Second Amended Complaint on March 18, 2019. Dkt. No. [118].

Between the filing of that answer and the Court's Order of December 5, 2019, Defendants committed a series of discovery failures. First, Defendant Star Importers & Wholesalers failed to produce Plaintiff's requested documents in discovery until after Star's representative, Mr. Hudda, testified in his deposition that he had sent the documents to Plaintiff. Dkt. No. [149-1] at 10–11. Defendants produced the documents the next day, with defense counsel explaining that he misplaced the documents because he works in a shared office space. Dkt. No. [152] at 11. Accordingly, the Court sanctioned Defendants by ordering Mr. Hudda to appear for a second deposition and ordering Star to pay the cost of that deposition. Dkt. No. [162]. Despite Plaintiff's noticing a deposition of Star, Dkt.

No. [165], Star failed to appear to be deposed in contravention of the Court's explicit order. Dkt. No. [170].

Second, Defendants failed to provide sales invoices for allegedly infringing products for the period of October 27, 2017 to March 19, 2018. When asked what happened to these invoices, Defendant Bijani testified that he threw them away. Dkt. No. [162] at 15. The Court sanctioned Defendants based on this destruction of evidence. Id. at 19.

Third, Defendants repeatedly failed to provide correct verifications for their interrogatory responses despite direct orders from this Court. The first order to that effect came on May 2, 2019, when the Court directed Defendants to provide corrected verifications by May 10, 2019. Dkt. No. [125]. Defendants failed to do so, and the Court had to instruct Plaintiff's counsel to send defense counsel a proper verification on May 22, 2019. Dkt. No. [131]. By December 5, 2019, Defendants had not yet provided proper verifications, and the Court then ordered them again to provide proper verifications. Dkt. No. [162].

The Court also found in its December 5, 2019 order that Defendants had deleted electronically stored information in the form of emails between Defendants and an important third party, the parties' mutual supplier, Shenzhen Kindvast. Id. As the Court has discussed, Defendants should have retained these communications, and their destruction prejudiced Plaintiff's ability to prove its case.

Given Defendants' actions, which have hampered Plaintiff's ability to obtain full discovery, the Court granted Plaintiff's request for additional discovery. Id. Plaintiff requested, and the Court granted, an opportunity to forensically image Defendants' devices to search for information that Defendants have not produced that is relevant to this litigation. The Court ordered Plaintiff to confer with Defendants to create an appropriate protocol for obtaining this additional discovery, keeping Defendants' privacy interests in mind, and instructed Plaintiff to notify the Court if the parties could not agree on a protocol. Id. The parties have not been able to agree and have now briefed their positions on this additional discovery. Dkt. Nos. [175, 176].

Plaintiff's suggested protocol involves several steps. Dkt. No. [175] at 2, 4. First, Defendants would identify which devices are to be examined. Plaintiff requests access to computers and smartphones that Defendants have used to conduct business since January 1, 2017. Defendants would remove SIM cards from any phones delivered so that they could make calls from other phones during the imaging of their devices. Plaintiff's forensic IT specialist would then obtain the devices and move them to a lab to be photographed and imaged. After this imaging, which Plaintiff submits could take 4 to 5 business days, the specialist would return the devices to Defendants. Plaintiff also requests Defendants' usernames and passwords to any QuickBook accounts that Defendants use in their business. Plaintiff's forensic and Plaintiff's counsel would then examine the cloned images of Defendants' devices, which could take about

15 business days. Plaintiff's forensic would produce a report regarding any findings, and Plaintiff would share its findings with Defendants and would meet and confer regarding Plaintiff's proposed use of the information at trial.

Defendants contest Plaintiff's proposal. Dkt. No. [176]. They argue that the search is overly broad—that the Court only authorized a search for missing cost-of-goods-sold information on Defendants' computers, not their smartphones. Id. at 1–2.

The Court finds that a forensic search of Defendants' devices—computers and smartphones—for relevant evidence is appropriate. See In re Ford Motor Co., 345 F.3d 1315, 1316–17 (11th Cir. 2003) ("Rule 34(a) allows a requesting party to inspect and to copy the product—whether it be a document, disk, or other device—resulting from the respondent's translation of the data into a reasonably usable form."). Defendants' repeated misdeeds throughout this case, which include reckless destruction and failure to produce relevant evidence, justify a search for any information relevant to this case, not just information related to the cost-of-goods-sold issue. See Source One Direct, Inc. v. Digitas, Inc., 2011 WL 13319641, at *4 (N.D. Ga. June 29, 2011) (noting that a court may grant a party's request to conduct a data search with proof of "improper conduct" (quoting In re Ford Motor Co., 345 F.3d at 1317)); id. at *4 n.3 (collecting cases where courts found improper conduct based upon "a history of incomplete and inconsistent responses to production requests"). A search of both Defendants' computers and their smartphones is appropriate because the record reflects that Defendants use

11

both in the course of business. Dkt. No. [149-18] at 22 ("Like we have a text conversation first. So when they made the box, they took a picture and they sent it to me. . . . In a text message."). The Court also does not limit this search to the missing cost-of-goods-sold information. It encompasses all discoverable information Plaintiff has requested.

Accordingly, the Court approves Plaintiff's proposed forensic search protocol with a several modifications to protect Defendants' privacy interests, including their right to assert privilege. See In re Ford Motor Co., 345 F.3d at 1317 ("While at times—perhaps due to improper conduct on the part of the responding party—the requesting party itself may need to check the data compilation, the district court must 'protect respondent with respect to preservation of his records, confidentiality of nondiscoverable matters, and costs.'" (quoting Fed. R. Civ. P. 34(a)). Plaintiff may use a computer expert to obtain and image Defendants' devices, but Plaintiff must provide Defendants a full opportunity to review the cloned data before it is produced to Plaintiff's counsel. Defendants may object to the production of nondiscoverable information, including irrelevant information and information that is protected by attorney-client privilege. Fed. R. Civ. P. 26(b)(1).

If Defendants wish to withhold information on grounds of privilege, they must submit a privilege log. See Johnson v. Gross, 611 F. App'x 544, 547–48 (11th Cir. 2015) (holding that privilege did not attach when attorney failed to submit a privilege log specifically designating information as privileged); Terrell v. OTS,

12

Inc., 2011 WL 864501, at *1 (N.D. Ga. Mar. 9, 2011) ("'[A] party claiming privilege is obliged to produce a privilege log and its failure to do so means the privilege is waived.'" (quoting Pensacola Firefighters' Relief Pension Bd. of Trustees v. Merrill Lynch Fenner & Smith, Inc., 265 F.R.D. 589, 592 (N.D. Fla. 2010)). The party invoking privilege "bears the burden of establishing that the privilege applies." Johnson, 611 F. App'x at 547 (citing Republic of Equator v. Hinchee, 751 F.3d 1185, 1189 (11th Cir. 2013)). To satisfy this burden, Defendants must (1) make an express claim of privilege as to each privileged piece of information and (2) "describe the nature of the items not produced or disclosed in a manner that will enable other parties to assess the claim. Id. (citing Fed. R. Civ. P. 26). "Blanket assertions of privilege before a district court are usually unacceptable. . . . Instead, an attorney must present himself with his records for questioning, and as to . . . *each* record elect to raise or not to raise the defense." Id. (quoting In re Grand Jury Subpoena, 831 F.2d 225, 227 (11th Cir. 1987)).

In other words, Defendants will carry the burden to specifically object to information that is inadmissible because of privilege and explain why that information is privileged. They should provide Plaintiff with a privilege log containing sufficient information to assess their privilege claims. The Court will allow Defendants **21** days after they receive the imaged documents to identify information they wish to withhold. If the parties dispute information that Defendants wish to withhold, either on grounds of relevance or privilege, the Court will consider the parties' arguments and resolve any dispute. Defendants

are reminded that relevance is not to be determined based only on the cost-of-goods issue. It pertains to relevance as to the entire case.

If the Court later determines that Defendants have withheld discoverable information during this process, the Court may consider further sanctions against Defendants to include default. Defendants have been given ample opportunity to comply with their discovery obligations in this matter and have repeatedly failed to honor those obligations.

### III. ATTORNEY'S FEES

Plaintiff also requests attorney's fees and expenses. Dkt. No. [172]. Plaintiff's attorney has submitted an affidavit in which he describes his experience as lead counsel in business litigation and trademark disputes, and he states that he has charged $425 per hour since January 1, 2019. Id. at 6. He submits that this rate is at or below the market rate for attorneys in Atlanta with comparable experience as lead counsel in trademark litigation. Id. at 7. Plaintiff's counsel has also itemized his time billed in obtaining sanctions, 184.8 hours, for a total of $52,473.80 in fees and expenses. Dkt. No. [172-2].[2]

Defendants contest Plaintiff's claim for fees and expenses. Dkt. No. [174]. Defendants argue that Plaintiff's hours billed are excessive because they argue that many of Plaintiff's counsel's billing entries are for paralegal work and other redundant work. Id. at 2. Defendants also argue that many of the entries involved

---

[2] Plaintiff's counsel has discounted most of his entries by 40% because he estimates that he spent 60% of his time on these tasks on the issues for which Plaintiff successfully obtained sanctions. Dkt. Nos. [172-1, 172-2].

work for sanctions claims on which Plaintiff did not prevail and work unrelated to the sanctions dispute generally. Id. at 7, 9–10. And Defendants argue that Plaintiff's proposed hourly rate of $425 per hour is excessive. Id. at 7–8. They submit that an appropriate rate would be $295 for tasks that a lawyer would perform and $150 for paralegal work. Id. at 9.

To determine a reasonable fee, the Court must calculate a lodestar amount, which is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckhart, 461 U.S. 424, 433 (1983). The Court may reduce that sum if it finds that "the documentation of hours is inadequate" or that Plaintiff's hours were not "reasonably expended." Id. at 433–34. Hours not reasonably expended include "requested hours that are excessive, redundant, or otherwise unnecessary . . . ." Id. at 434. The Eleventh Circuit has described a reasonable hourly rate as "the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" Dial HD, Inc. v. ClearOne Commc'ns, 536 F. App'x 927, 930 (11th Cir. 2013) (citing Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994)). As the fee applicant, Plaintiff bears the burden "to provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity." Id. at 931 (citing ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999)).

The Court has reviewed Plaintiff's affidavit and finds that $425 is a reasonable rate for Plaintiff's counsel. Plaintiff's counsel's sworn statement that he charges $425 per hour is strong evidence of the reasonableness of that rate. Dillard v. City of Greensboro, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (holding that what an attorney "charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand'" (quoting Blum v. Stenson, 465 U.S. 465 U.S. 886, 895 n.11 (1984))). The Court also relies on its own knowledge of the Atlanta market and the going rates for lawyers of comparable skill, experience, and reputation to find that this rate is reasonable. See Maner v. Linkan LLC, 602 F. App'x 489, 493 (11th Cir. 2015) ("In establishing a reasonable hourly rate, the district court may rely on its own expertise . . . .").

The Court has also carefully reviewed the itemized billing entries of Plaintiff's counsel. Dkt. No. [172-2]. The Court notes that Plaintiff has discounted many of his entries by 40% to account for sanctions claims that were unsuccessful. Id.

However, as Defendants argue, some of the tasks Plaintiff itemizes are not compensable. The Court previously ordered Plaintiff to tailor its request for expenses to issues that the Court found sanctionable. Dkt. No. [168]. But many of Plaintiff's listed tasks involve discovery not specifically related to Plaintiff's successful pursuit of sanctions. The inclusion of these tasks calls for a reduction in the lodestar amount. See Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th

Cir. 1988) ("A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.") The Court therefore imposes an across-the-board reduction of 25% to Plaintiff's lodestar amount to account for non-compensable tasks. Id. ("[T]he Court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion."). This reduction results in an award of **$39,262.35** in fees to Plaintiff.[3]

## IV.  CONCLUSION

Based upon the foregoing, Plaintiff's Proposal Regarding Sanctions [169] is **GRANTED in part** and **DENIED in part**. The Court **DENIES** Plaintiff's request to assess sanctions under the multi-factor test of Flury or Rule 37(e)(2). The Court **GRANTS** Plaintiff's request for sanctions under Rule 37(e)(1). The Court will preclude Defendants from submitting evidence regarding the deleted communications with their Chinese supplier. The Court **RESERVES** judgment as to Mr. Lilenfeld's testimony except as it relates to communications with the Chinese supplier, which are excluded.

The Court **APPROVES** Plaintiff's protocol for forensically imaging Defendants' devices [175] in part. Defendants must notify Plaintiff within **5** days of this Order of any devices, including both cellphones and computers, that they have used in conducting business relevant to this case. They must then make

---

[3] The Court also approves Plaintiff's request for $124 in expenses tied to the subpoena of missing emails from Google, LLC. Dkt. No. [172-2] at 9.

those devices available for Plaintiff's counsel or Plaintiff's forensic IT consultant to retrieve. Plaintiff must return Defendants' devices within **5** days of retrieval.

After the imaging of Defendants' devices is complete, Plaintiff's IT consultant must provide Defendants with a copy of the information that has been downloaded. Defendants will have **21** days from receipt of this information to file specific objections to the production of this information. If Defendants object on grounds of privilege, they must submit a detailed privilege log as described above. If the parties dispute the production of information, they should raise their dispute with the Court.

Plaintiff's Motion for Attorney's Fees [172] is **GRANTED**. The Court awards Plaintiff **$39,386.35** in fees and expenses.

**IT IS SO ORDERED** this 15th day of June, 2020.

_____
**Leigh Martin May**
**United States District Judge**