THE FOLLOWING IS THE P.D.F. OF AN OFFICIAL TRANSCRIPT.

OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE

OFFICIAL COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A

PERIOD OF 90 DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED

TRANSCRIPT BY THE DOCKET ENTRY NUMBER, REFERENCING PAGE AND

LINE NUMBER, ONLY AFTER THE COURT REPORTER HAS FILED THE

OFFICIAL TRANSCRIPT.  HOWEVER, YOU ARE PROHIBITED FROM

ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY DOCUMENT FILED

WITH THE COURT.

```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION




NOORANI TRADING, INC.,        )
                              )
                PLAINTIFF,    )
                              )
        VS.                   )
                              )               DOCKET NUMBER
AMIT F. BIJANI, ET AL.,       )               1:17-CV-1344-LMM
                              )
                DEFENDANTS.   )               ATLANTA, GEORGIA
                              )               JULY 12, 2021
                              )
_____)




                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LEIGH MARTIN MAY,
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:            TODD MEROLLA
                             MEROLLA & GOLD, LLP
                             ATLANTA, GEORGIA  30309

FOR THE DEFENDANT:           ROBERT WARD
                             BMWIPLAW, LLC
                             ATLANTA, GEORGIA  30326



            MECHANICAL STENOGRAPHY OF PROCEEDINGS
          AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY

OFFICIAL COURT REPORTER:     MONTRELL VANN, RPR, RMR, RDR, CRR
                             2160 UNITED STATES COURTHOUSE
                             75 TED TURNER DRIVE, SOUTHWEST
                             ATLANTA, GEORGIA  30303
                             (404)215-1549
```

1          *(IN ATLANTA, FULTON COUNTY, GEORGIA, JULY 12, 2021, IN*

2   *OPEN COURT.)*

3               THE COURT:  OKAY.  GOOD MORNING.  YOU MAY BE SEATED.

4               MR. WARD:  GOOD MORNING.

5               MR. MEROLLA:  GOOD MORNING.

6               THE COURT:  OKAY.  WE ARE HERE IN CIVIL ACTION

7   17-CV-1344, NOORANI, INC. VS. AMIT BIJANI, ET AL.

8         AND IF COUNSEL WOULD INTRODUCE THEMSELVES FOR THE RECORD,

9   PLEASE.

10              MR. MEROLLA:  TODD MEROLLA ON BEHALF OF THE

11  PLAINTIFF.  GOOD MORNING.

12              THE COURT:  GOOD MORNING.

13              MR. WARD:  BOB WARD FOR DEFENDANTS, YOUR HONOR.

14              THE COURT:  OKAY.

15              MR. WARD:  GOOD MORNING.

16              THE COURT:  GOOD MORNING.  WE ARE HERE TODAY ON

17  PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS.  WE'VE HAD A LOT

18  OF HEARINGS IN THIS CASE, SO THIS IS JUST THE NEXT IN A SERIES.

19  AND ON JUNE 15TH, 2020, I ENTERED A SANCTIONS ORDER AND WARRANT

20  OF TERMINATING SANCTIONS IF SOME OF THE DISCOVERY ABUSES

21  CONTINUED.  AND THIS MOTION HAS BEEN FILED BECAUSE THE

22  PLAINTIFFS ALLEGE THAT THEY DID IN FACT CONTINUE.

23        WHAT I'M GOING TO DO TODAY IS I'VE TOLD YOU BOTH THAT I'M

24  GIVING YOU 30 MINUTES PER SIDE.  IT'S NOT AN EVIDENTIARY

25  HEARING.  AND THE REASON I DIDN'T SET AN EVIDENTIARY HEARING IS

```
 1    THAT I DON'T KNOW THAT, RELEVANT TO MY DECISION, THAT THERE
 2    REALLY ARE DISPUTED FACTS THAT ARE GOING TO COME INTO PLAY.  I
 3    DON'T KNOW -- IF I DO FIND THAT THERE ARE DISPUTED FACTS THAT I
 4    HAVE TO RESOLVE, THEN AN EVIDENTIARY HEARING MAY BE
 5    APPROPRIATE.  BUT AT THIS POINT I HAVE ENOUGH UNDISPUTED FACTS
 6    IN THE RECORD THAT I THINK I CAN PROCEED WITH THE MOTION.
 7    THERE WAS AN ISSUE WHERE DEFENDANT, THE BIJANI DEFENDANTS,
 8    WANTED TO TAKE A DEPOSITION TO INCLUDE SOME ADDITIONAL
 9    INFORMATION IN THE RECORD, AND I DID ALLOW THAT, BUT IT'S
10    DETERMINED THAT THE BIJANI DEFENDANTS DID NOT WANT TO MOVE
11    FORWARD WITH THAT DEPOSITION, SO THAT'S WHAT BRINGS US HERE
12    TODAY.
13         NOW, IN TERMS OF THE ARGUMENT THAT I'M GOING TO HEAR FROM
14    THE PARTIES, I KNOW THERE IS A LOT OF ANIMOSITY BETWEEN THE
15    PARTIES AND IT COMES OUT IN THE BRIEFS.  I WILL TELL YOU THAT
16    IT WILL BE A LOT MORE PERSUASIVE TO ME TO STICK TO THE FACTS IN
17    THE CASE AND THE LAW AND WHAT THE COURT HAS TO DECIDE RATHER
18    THAN KIND OF CLAIMS THAT PEOPLE ARE SETTING PEOPLE UP OR THINGS
19    LIKE THAT.  IT'S JUST THAT ULTIMATELY IS NOT PERSUASIVE.  WE
20    NEED TO TALK ABOUT THE LAW, THE FACTS, THE UNDISPUTED FACTS,
21    AND THE COURT WILL THEN ISSUE AN ORDER.
22         NOW, I DID DECIDE TO GIVE A HEARING BECAUSE I AM
23    CONSIDERING ISSUING SERIOUS SANCTIONS HERE, AND WANTED TO MAKE
24    SURE THAT EVERYONE HAD A CHANCE TO BE HEARD ON THESE ISSUES
25    BEFORE THE COURT ENTERS AN ORDER.  I DON'T THINK THERE'S A LOT
```

1 OF DISPUTE AS TO THE LAW THAT APPLIES.  IT'S JUST WHETHER THE

2 CONDUCT THAT'S IN THE PLAINTIFF'S MOTION ARISES TO THE LEVEL

3 THAT WOULD WARRANT THE SANCTIONS THAT ARE BEING REQUESTED.

4     SO IN TERMS OF COVID PROTOCOLS AND THINGS OF THAT NATURE,

5 WHAT I'M DOING IS IF YOU'RE SPEAKING, YOU CAN REMOVE YOUR MASK.

6 I'LL JUST HAVE YOU STAY AT COUNSEL TABLE FOR YOUR ARGUMENT JUST

7 BECAUSE IT'S EASIER THAN HAVING EVERYONE MOVE AWAY.  BECAUSE

8 YOU'RE AT THE TABLE, IF YOU WANT TO STAY SEATED SO YOU CAN SEE

9 YOUR NOTES MORE CAREFULLY, THAT'S FINE, OR IF YOU WANT TO

10 STAND.  I DON'T REALLY HAVE A PREFERENCE THERE.  IT'S JUST WHAT

11 YOU'RE MOST COMFORTABLE WITH.  AND SO I THINK, THOUGH, WITH THE

12 TIMERS AND, LIKE I SAID, WE HAD 30 MINUTES PER SIDE, AND,

13 MR. MEROLLA, WE'LL START THE TIMER WHEN YOU START SPEAKING AND

14 STOP IT.  IF YOU HAVE TIME REMAINING, THAT WILL BE USED FOR

15 REBUTTAL TO MR. WARD'S ARGUMENT.  SO, WITH THAT, MR. MEROLLA,

16 YOU MAY PROCEED.

17     MR. MEROLLA:  WELL, THANK YOU, YOUR HONOR.  I'LL

18 CHOOSE TO SIT AND GLANCE AT MY NOTES.  WITH THE COURT'S

19 PERMISSION I'D LIKE TO RESERVE THE BULK OF MY 30 MINUTES TO

20 REBUT WHATEVER IT IS THAT DEFENDANT'S COUNSEL REPRESENTS.  WE

21 BELIEVE THAT THE SUBMITTED PAPERS ON THE MOTION, THAT WE'VE

22 SHOWN SOME CLEAR EVIDENCE OF MISCONDUCT.  WE'VE REVIEWED THE

23 AFFIDAVITS AND THE MATERIALS THAT THEY'VE SUBMITTED, AND THAT

24 WARRANTS A STRIKING OF THE ANSWER IN THIS PARTICULAR CASE.  BUT

25 DEPENDING ON WHAT THE ARGUMENT IS PRESENTED TODAY, I'D LIKE TO

1    RESERVE MOST OF MY TIME FOR REBUTTAL.

2         THE COURT:  WELL, JUST SO THE RECORD IS CLEAR, YOU

3    DON'T HAVE TO USE ALL OF THE BULK OF YOUR TIME BY ANY MEANS ON

4    THE FIRST PART, BUT WHY DON'T YOU SUMMARIZE WHAT IT IS THAT YOU

5    SAY WARRANTS SANCTIONS SO WE'LL HAVE A BETTER HEARING IN THE

6    RECORD FOR HOW YOU'RE PROCEEDING.

7         MR. MEROLLA:  ABSOLUTELY.  ABSOLUTELY.  YOUR HONOR

8    MENTIONED KIND OF THE PREDICATE FOR TODAY, THE JUNE 2020 ORDER,

9    BUT REALLY THE MISCONDUCT RELATES ALL THE WAY BACK TO 2017.  I

10   BELIEVE IT WAS MAY 2017 -- EXCUSE ME -- MAY 2019 IN WHICH YOU

11   ASKED THE DEFENDANTS TO AFFIRM, TAKE A SECONDARY SEARCH AND

12   MAKE SURE YOU'VE PRODUCED EVERYTHING THAT'S RESPONSIVE.

13   COUNSEL MADE THAT REPRESENTATION, WE HAD SOME DISCOVERY,

14   DEPOSITION, SOME THINGS CAME OUT, AND SO ON AND SO FORTH.  I

15   SUSPECT THAT THE COURT IS MORE THAN ADEQUATELY FAMILIAR WITH

16   THE RECORD AND HOW WE GOT HERE TO THE JUNE 2020 ORDER.  AND

17   REALLY WHERE WE ARE TODAY, EVERYTHING KIND OF CAME FULL CIRCLE.

18   AND I'LL GET TO THAT VERY BRIEFLY.

19       REGARDING THE STANDARD, I DON'T THINK THERE'S ANY DISPUTE

20   THAT THE STANDARD HERE TODAY IS AN OBJECTIVE STANDARD.  IT'S

21   NOT A SUBJECTIVE STANDARD.  OH, WELL, I JUST -- YOU KNOW, AND

22   GIVEN MY EDUCATION AND MY EXPERIENCE, I DON'T THINK IT'S

23   UNREASONABLE TO OVERRIDE THE OPERATING SYSTEM.  THAT'S NOT THE

24   STANDARD.  I THINK WE'VE BRIEFED IT.  IT'S AN OBJECTIVE

25   STANDARD.  WAS IT OBJECTIVELY REASONABLE TO OVERRIDE THE

1    OPERATING SYSTEM OF THAT ONE IMAC COMPUTER IN THE FACE OF AN

2    ORDER ALLOWING THE CLONING AND THE EXAMINATION FORENSICALLY OF

3    THAT LAPTOP?  WE'VE SUBMITTED EVIDENCE, MR. BREUNIG, AND THAT'S

4    NOT REBUTTED.  MR. BIJANI THINKS IT'S REASONABLE FROM HIS

5    PERSPECTIVE, BUT THAT'S NOT THE COURT'S ANALYSIS.  IT NEEDS TO

6    BE AN OBJECTIVE STANDARD.  AND WE'VE SUBMITTED EVIDENCE THAT

7    OBJECTIVELY THAT WAS OUT OF BOUNDS TO OVERRIDING THE OPERATING

8    SYSTEM AND DEFEAT THE ENTIRE PURPOSE OF THE FORENSIC

9    EXAMINATION.  IN DEFENSE -- EXCUSE ME -- IN DEFENSE THEY

10   BASICALLY SAY, OH, THERE'S NOTHING ON THERE ANYWAY.  WELL, WE

11   DON'T KNOW THAT.  WE DO KNOW THAT CERTAIN THINGS WERE PRODUCED

12   DURING DISCOVERY, INDICIA WERE THAT OTHER THINGS EXISTED,

13   ADMISSIONS THAT THINGS WERE DELETED IN THE ROUTINE COURSE OR

14   OTHERWISE.  AND SO THE COURT ALLOWED US TO DO THIS FORENSIC

15   EXERCISE.  AND THE WHOLE THING WAS DEFEATED BY THAT.

16        FURTHER, REGARDING WHAT WAS BEING TURNED OVER, THE COURT

17   DIRECTED THEM TO IDENTIFY ALL DEVICES THAT WERE USED, AND THEY

18   HAD IDENTIFIED TWO.  THE COURT DIDN'T SAY, WHAT DO YOU HAVE NOW

19   IN YOUR POSSESSION AND TURN THAT OVER.  THE COURT'S DIRECTIVE

20   REGARDING THIS ISSUE WAS, IDENTIFY ALL DEVICES ELECTRONICALLY

21   THAT YOU USED.  AND THE REASON FOR THAT WAS AT A DEPOSITION

22   WHERE I BELIEVE MR. BIJANI TESTIFIED THAT, I KEPT EVERYTHING ON

23   THE COMPUTER, EVERYTHING'S IN THE COMPUTER, I DON'T CHECK

24   BECAUSE I DIDN'T HAVE A NEED TO, THAT SORT OF THING.  SO THE

25   COURT SAID IDENTIFY ALL DEVICES.  THEY IDENTIFIED TWO.

1  MR. BREUNIG RAN HIS ANALYSIS.  WE TOOK A LOOK AT WHAT WAS

2  PRODUCED IN DISCOVERY.  AND THERE WAS A SAMSUNG PHONE THAT

3  LOOKED LIKE IT FROM SOME OF THE TEXT MESSAGES AND ALL THAT.  IN

4  RESPONSE THE DEFENDANTS CAME BACK AND SAID, WELL, YEAH, THERE

5  WERE -- YOU KNOW, WE BROKE THIS ONE AND WE LOST THAT ONE AND WE

6  HAD RETAINED THAT, DAH, DAH, DAH, DAH.  SO RIGHT FROM THE

7  BEGINNING THEY DIDN'T COMPLY WITH THIS EXERCISE OF, WHAT DID

8  YOU USE IN THE COURSE OF YOUR BUSINESS RELATED TO THIS CASE?

9  AFTER THE FORENSIC, THEY IDENTIFIED THREE OR FOUR OTHER DEVICES

10 THAT WE NEVER LOOKED AT.  THERE WAS THIS IPAD.  THAT WAS NEVER

11 MADE AVAILABLE.  SO YOU HAVE KIND OF A DISOBEYANCE OF THE FRONT

12 END OF THE FORENSIC REPORT.  WE GET THE FORENSIC REPORT, AND IT

13 TURNS OUT THAT THE IMAC COMPUTER -- THIS IS SOMETHING I DIDN'T

14 KNOW BECAUSE I'M MORE OF A P.C. GUY -- YOU OVERRIDE THAT

15 OPERATING SYSTEM, IT'S GONE.  THERE'S NOTHING LEFT ONCE YOU

16 OVERRIDE THE WHOLE THING.  THAT'S DIFFERENT THAN THE UPDATES

17 AND THAT SORT OF THING, AND THAT'S ALL WELL-LAID OUT IN THE

18 BREUNIG DEPOSITION.  ONCE YOU OVERRIDE THAT OPERATING SYSTEM,

19 WHATEVER THE LITTLE REMNANTS AND LEGACY INFORMATION AND DATA

20 THAT MAY BE ON THAT DEVICE IS GONE FOREVER.  AND IN HIS

21 OPINION, IN HIS EXPERT OPINION THAT WAS OUT OF BOUNDS,

22 UNREASONABLE TO OVERRIDE THE OPERATING SYSTEM ASIDE -- IN AND

23 ABOVE AND ASIDE FROM THE DUTY TO PRESERVE EVIDENCE ONCE THE

24 LITIGATION IS PENDING.  IN YOUR HONOR'S FORMER ORDERS, PREVIOUS

25 ORDERS, YOU DETAILED THE DIFFERENCE BETWEEN PRE-LITIGATION AND

1    POST LITIGATION.  SO, IN ANY EVENT, THAT'S WHAT HAPPENED WITH

2    THE LAPTOP.

3        ON THE CELL PHONE, I BELIEVE THE EVIDENCE IS THAT IT WAS A

4    NEW CELL PHONE AS OF SEPTEMBER 2019 WHEN THIS WHOLE THING

5    STARTED.  AND WE DIDN'T HAVE ANY DATA FROM '17, '18, AND THAT

6    SORT OF THING.  AND IN TERMS OF WHAT THEY'RE SAYING NOW, SAYING

7    BASICALLY SHAME ON US FOR NOT ASKING FOR THE PASSWORDS BECAUSE

8    ALL THE DATA TO ZELLE AND AMAZON AND ALL THESE OTHER APPS, I

9    THINK THEY HAVE A LAUNDRY LIST OF, LIKE, 13 APPS THEY CLAIM

10   THAT ALL THIS DATA ON SALES, COST INFORMATION, IS STILL THERE.

11   AND THAT'S WHERE I COME TO THE BEGINNING SAYING WE'VE COME FULL

12   CIRCLE BECAUSE IF IT'S STILL THERE, AS MR. BREUNIG DETAILED IN

13   HIS SECOND AFFIDAVIT, IF ALL THIS STUFF WAS THERE, HE WASN'T

14   NEEDED BECAUSE THEY COULD HAVE JUST PRODUCED IT.  AND IN THESE

15   AFFIDAVITS OR STATEMENTS, WHATEVER YOU WANT TO CALL IT, THAT

16   MR. BIJANI SUBMITTED WITH RESPECT TO THIS MOTION, HE'S

17   BASICALLY SAYING -- AND I THINK HE TESTIFIED AT DEPOSITION

18   THAT, WELL, JUST GET IT FROM A THIRD SOURCE BECAUSE YOU'LL HAVE

19   MORE TRUST IN THE THIRD SOURCE THAN FROM ME.  BUT THAT'S NOT

20   THE OBLIGATION.  THE OBLIGATION IS ON THE LITIGANT TO

21   REASONABLY PRESERVE EVIDENCE, PRODUCE IT IF IT'S DISCOVERABLE,

22   ET CETERA, ET CETERA, AND THAT HASN'T BEEN DONE.  YOU'VE

23   ALREADY FOUND THEM TO BE IN BAD FAITH.  THIS IS, IN OUR VIEW,

24   JUST BEYOND THE PALE IN TERMS OF THE OPERATING SYSTEM.  AND NOW

25   TO CONTEND AFTER COUNSEL AFFIRMED THAT AFTER A SECONDARY

1   SEARCH, THAT THEY PRODUCED ALL RESPONSIVE DOCUMENTS -- I

2   BELIEVE IT WAS MAY 2019.  AFTER WE RETAIN A FORENSIC THEY COME

3   BACK AND SAY, WELL, THERE'S NOTHING ON THERE ANYWAY AND ALL THE

4   DATA IS AVAILABLE ON THIRD-PARTY APPS.  SO PLAINTIFF SHOULD NOT

5   GET ANY RELIEF ON THE MOTION.  THAT'S WHY I SAY WE'VE COME FULL

6   CIRCLE FROM -- WHERE ALL THIS DISCOVERY STUFF STARTED WHEN WE

7   REALLY GOT INTO IT IN THE SPRING OF 2019.  WITH THAT, I'D LIKE

8   TO RESERVE MY TIME AND I'LL ADDRESS WHATEVER IT IS THAT COUNSEL

9   BRINGS UP.

10          THE COURT:  OKAY.  THANK YOU.

11          MR. MEROLLA:  THANK YOU.

12          THE COURT:  MR. WARD.  MR. WARD, I WANTED YOU TO

13   REMAIN AT YOUR TABLE.

14          MR. WARD:  OH, OKAY.

15          THE COURT:  YOU CAN STAND OR SIT, BUT WITH COVID

16   PROTOCOLS, WE'RE HAVING PEOPLE STAY AT THEIR DESKS.

17          MR. WARD:  OH, OKAY.

18          THE COURT:  THANK YOU.

19          MR. WARD:  THANK YOU.  MAY IT PLEASE THE COURT,

20   DISTINGUISHED COUNSEL, MR. BIJANI.  LET US NOT FORGET FOR A

21   MOMENT THAT THIS IS A TRADE DRESS CASE.  THE -- THERE ARE TWO

22   ISSUES IN A TRADE DRESS CASE THAT DEFINE THE SCOPE OF

23   DISCOVERY.  ONE, IS WHAT THE TRADE DRESS LOOKS LIKE.  THAT'S A

24   JURY QUESTION.  WE COULD SEE HERE THAT THE JURY CAN MAKE UP ITS

25   MIND WHETHER THERE'S CONFUSING SIMILARITY AS TO THE CONSUMER OR

11

1    NOT.

2        THE SECOND ISSUE IS WHAT MONETARY RELIEF, IF ANY, SHOULD

3    BE AWARDED, AND THAT CAN COMPRISE DAMAGES AND/OR PROFITS IN THE

4    DISCRETION OF THE COURT.  IN TERMS OF THE FIRST ISSUE,

5    EVERYTHING HAS BEEN PRODUCED BECAUSE IT'S IN THE MARKETPLACE.

6    A DECISION CAN BE MADE BY THE JURY AS TO WHETHER THERE'S

7    CONFUSING SIMILARITY OR NOT.

8        THE COURT:  ISN'T, THOUGH, INTENT AN ISSUE THAT CAN

9    WARRANT TREBLE DAMAGES, SO ISN'T THAT SOMETHING THAT INTERNAL

10   DISCOVERY WOULD BE NECESSARY TO HELP PROVE?

11       MR. WARD:  WELL, IT COULD BE.  THAT IS A POSSIBILITY,

12   YES.  THE -- ULTIMATELY, HOWEVER, WILLFULNESS IS GOING TO BE

13   DETERMINED BASED ON HOW CLOSE THE TRADE DRESS IS AND WHETHER

14   THE TRADE DRESS HAS BEEN CHANGED OVER TIME.  YOU CAN SEE, FOR

15   EXAMPLE, THAT THE PLAINTIFF HERE HAS CHANGED ITS TRADE DRESS

16   MULTIPLE TIMES, THUS, DILUTING ANY, QUOTE, SECONDARY MEANING

17   THAT THEY WOULD OTHERWISE HAVE.  BUT JUST TO CONSIDER THE ISSUE

18   OF DISCOVERY ON MONETARY ISSUES, THE DEFENDANTS IN THIS CASE

19   PRODUCED THEIR GENERAL LEDGER.  AND AS YOUR HONOR KNOWS BY

20   DEFINITION, THE GENERAL LEDGER ENCOMPASSES EVERY SINGLE

21   FINANCIAL TRANSACTION IN THE COMPANY.  THEY'VE ALSO PRODUCED

22   THEIR TAX RETURNS.  SO AN INFORMED DECISION CAN BE MADE ON THE

23   SCOPE OF MONETARY RELIEF, IF ANY.

24       THERE'S BEEN THIS REVOLVING EVOLUTION BY THE PLAINTIFF OF

25   ONE ACCUSATION AFTER ANOTHER.  IT'S BEEN CHARACTERIZED HERE AS

1    COMING FULL CIRCLE, AND THAT'S BECAUSE THE PLAINTIFF HAS MADE A

2    SERIES OF -- EVERY TIME THEY'VE BEEN SHOWN TO BE INCORRECT,

3    THEY'VE MADE A NEW ACCUSATION.

4            THE COURT:  WELL, AND, MR. WARD, IT'S NOT ONLY

5    ACCUSATIONS FROM THE PLAINTIFF.  THE COURT HAS ISSUED SANCTIONS

6    ORDERED AND THE COURT HAS FOUND AND ORDERED YOU TO DO CERTAIN

7    THINGS THAT APPEAR THAT MAYBE HAVEN'T BEEN DONE.  SO WE'RE NOT

8    JUST TALKING ABOUT ACCUSATIONS FROM THE PLAINTIFF.  WE'RE

9    TALKING ABOUT COURT INSTRUCTIONS.  AND, FOR EXAMPLE, THIS ISSUE

10   THAT MR. MEROLLA RAISES ABOUT THERE BEING DOCUMENTS THAT ARE ON

11   THIRD-PARTY SERVERS OR APPS OR THINGS OF THAT NATURE, MY

12   UNDERSTANDING WAS, TO THE EXTENT THAT ANY DOCUMENTS LIKE THAT

13   EXISTED, THAT IT WAS YOUR RESPONSIBILITY TO OBTAIN THOSE AND

14   PRODUCE THOSE TO THE PLAINTIFF.  AND THINGS LIKE CHANGING THE

15   OPERATING SYSTEM WHEN THERE WAS AN ORDER IN PLACE TO HAVE THE

16   COMPUTERS SEARCHED, THOSE AREN'T JUST ACCUSATIONS NECESSARILY

17   FROM MR. MEROLLA.  THOSE ARE THINGS THAT WERE ORDERED BY THE

18   COURT FOR YOU TO DO, AND THAT'S WHERE MY ANALYSIS IS, HAVE YOU

19   DISOBEYED THE COURT'S ORDERS?  HAVE YOU ENTIRELY PRODUCED

20   EVERYTHING I'VE ORDERED YOU TO PRODUCE?  AND TO THE EXTENT THAT

21   I HAD ORDERED THIS FORENSIC EVALUATION AND THEN FIND THAT

22   POTENTIALLY THE DEVICES TO BE SEARCHED WERE NOT DISCLOSED,

23   OPERATING SYSTEMS WERE REWRITTEN, PHONES DID NOT EXIST FROM THE

24   TIME THAT THE SEARCH WAS ORDERED, THAT'S WHERE I AM AND

25   CONCERNED.

1          MR. WARD:  YEAH, LET ME ADDRESS THE LAST POINT FIRST.

2     WHEN THE COMPUTER BROKE -- BY THE WAY, I HAVE A 27-INCH APPLE

3     MAC VIRTUALLY IDENTICAL TO WHAT'S BEING USED BY THE DEFENDANTS

4     IN THIS CASE.  THE OPERATING SYSTEM DOES OPERATE -- DOES

5     OVERRIDE ABOUT EVERY MONTH AUTOMATICALLY.  AND AS FAR AS I'M

6     CONCERNED, NONE OF MY DATA HAS EVER BEEN LOST.  BUT

7     THE COMPUTER WAS TAKEN TO THE EXPERTS COMPUTER SLEUTHS TO BE

8     REPAIRED, AND HERE'S WHAT THEY SAID.  QUOTE, RELOAD O.S. --

9     THAT MEANS OPERATING SYSTEM -- AND ALL DATA AS IS.

10         NOW, THAT'S WHAT THEY SAID.  NOW, IF THEY DIDN'T DO THAT

11    FOR SOME REASON OR OTHER, I DON'T THINK THAT CAN BE ATTRIBUTED

12    TO THE DEFENDANT.  THAT'S CERTAINLY NOT WILLFUL MISCONDUCT.

13    NOW, IT'S BEEN KNOWN TO EVERYONE THAT -- FROM THE VERY

14    BEGINNING THAT THERE ARE NINE OR TEN APPS USED BY THIS

15    BUSINESS, THE DEFENDANT, TO RUN ITS BUSINESS, AND ALL OF THOSE

16    APPS STORE THE DATA ON-LINE.

17         THE COURT:  BUT DID YOU GO TO THOSE APPS AND PRINT

18    THE DATA AND GIVE IT TO THE PLAINTIFF?

19         MR. WARD:  I'LL ASK MR. BIJANI.

20         MR. BIJANI:  YES, MA'AM.  WITH RESPECT TO -- WITH

21    RESPECT TO THE COURT, I'VE OBEYED ALL THE -- ALL THE

22    REQUIREMENTS IN THE ORDER.  AND I DID PROVIDE FOR, LIKE, FOR

23    EXAMPLE, FIRST OF ALL, THEY'RE USING MY DEPOSITION --

24         THE COURT:  WELL, MR. WARD, I'M ASKING YOU, THE

25    LAWYER IN THE CASE.

1          MR. BIJANI:  -- QUICKBOOKS AND --

2          THE COURT:  JUST A SECOND.

3      MR. WARD, I'M ASKING YOU AS A LAWYER IN THE CASE.  YOU'RE

4  SAYING THAT ALL THIS INFORMATION EXISTS ON-LINE.  I'M ASKING

5  YOU DID YOU PROVIDE THIS INFORMATION TO MR. MEROLLA?

6          MR. WARD:  THE QUICKBOOKS AND THE BANK STATEMENTS.

7          THE COURT:  WAIT.  Y'ALL CAN'T BOTH TALK IN THE

8  MICROPHONE.

9          MR. WARD:  A NUMBER OF ITEMS, I CAN'T TAKE OFF ALL OF

10  THE ITEMS.

11          THE COURT:  I'M ASKING YOU A VERY DIRECT QUESTION.

12          MR. WARD:  I DON'T KNOW.

13          THE COURT:  OKAY.

14          MR. WARD:  I DON'T KNOW, YOUR HONOR.

15          THE COURT:  OKAY.  AND DO YOU KNOW THAT I ORDERED YOU

16  TO DO THAT, I TOLD YOU TO CHECK AND DOUBLE CHECK TO MAKE SURE

17  THAT YOU DID DO THAT?  THIS WAS YEARS AGO.  THIS WASN'T JUST

18  THE OTHER DAY.  THIS WAS YEARS AGO LITERALLY.  AND NOW YOU'RE

19  SAYING THAT YOU DON'T KNOW IF YOU OBEYED THAT COURT ORDER.

20  SO --

21          MR. WARD:  I PRODUCED WHAT I WAS GIVEN, YOUR HONOR.

22  I'VE MADE ALL -- EVERY SINGLE ORDER THAT THIS COURT HAS GIVEN

23  I'VE TRANSMITTED TO MY CLIENT AND I'VE TRANSMITTED TO THE OTHER

24  SIDE THE DISCOVERY THAT'S BEEN GIVEN TO ME.

25          THE COURT:  BUT DO YOU KNOW AS A LAWYER YOUR

1  OBLIGATION IS TO SIT DOWN WITH YOUR CLIENT, BECAUSE Y'ALL ARE A

2  TEAM AS PART OF THIS TODAY, IS TO SIT DOWN WITH YOUR CLIENT AND

3  MAKE SURE AND DOUBLE CHECK AND -- BECAUSE HERE'S WHAT I'M

4  CONFUSED ABOUT.  YOU'RE SAYING TWO THINGS.  YOU'RE SAYING, ONE,

5  I MAY HAVE PRODUCED EVERYTHING, AND, TWO, THERE EXISTS ALL THIS

6  OTHER INFORMATION THAT'S OUT THERE THAT MR. MEROLLA DOESN'T

7  HAVE.  AND THOSE ARE INCONSISTENT.

8         MR. WARD:  WELL, LET ME TELL YOU WHAT WAS PRODUCED.

9         THE COURT:  WELL, THAT'S NOT GOING TO HELP ME BECAUSE

10  I NEED TO KNOW DO YOU KNOW IF THERE WERE -- MR. MEROLLA HAS

11  SAID THAT THERE ARE DOCUMENTS THAT YOU HAVE IDENTIFIED THAT HE

12  DOES NOT HAVE.  SO IS THAT TRUE OR NOT?

13         MR. WARD:  I DON'T KNOW.  I'D HAVE TO SEE WHAT THE

14  DOCUMENTS ARE THAT HE'S ASKING FOR.  I HAVE A LIST OF ABOUT 13

15  THINGS THAT WE DID SUPPLY.  I DON'T KNOW OF ANYTHING THAT WE

16  DIDN'T SUPPLY.

17         THE COURT:  OKAY.  WELL, IT'S NOT GOING TO HELP ME TO

18  GO THROUGH THAT LIST BECAUSE THAT LIST IS NOT GOING TO BE

19  COMPARED TO WHAT IS OUT THERE, WHICH I DON'T HAVE THAT BASELINE

20  TO COMPARE IT TO.  SO, OKAY.  WELL, IT SOUNDS LIKE THAT POINT

21  IS UNCLEAR, SO WHY DON'T YOU MOVE TO ANOTHER ISSUE.

22         MR. WARD:  I THINK THAT IT IS SIGNIFICANT THAT THIS

23  DATA WAS KEPT ON-LINE AND THAT THEY HAD THE PASSWORDS.  AND IF

24  THEY DIDN'T PURSUE THAT DISCOVERY BY USING THOSE PASSWORDS, I

25  THINK THEY SHOULD HAVE DONE THAT.

1    THE COURT:  SO YOU'RE SAYING THAT THE PLAINTIFF'S

2  LAWYER SHOULD HAVE LOGGED ON TO YOUR CLIENT'S PERSONAL ACCOUNTS

3  USING NAMES AND PASSWORDS, JUST GONE THROUGH THAT RATHER THAN

4  YOU PRODUCING THE DOCUMENTS AS THE COURT ORDERED IT?

5    MR. WARD:  I BELIEVE THAT WE DID PRODUCE THE

6  DOCUMENTS.  QUICKBOOKS, THE SALES, COST OF GOODS, THE PAYROLL,

7  THE SALES TO CUSTOMERS, PAYMENTS TO CUSTOMERS, THE GENERAL

8  LEDGER, THE EXPENSES, THE TAX RETURNS, THE FINANCIAL STATEMENTS

9  FROM THE ACCOUNTANT, BANK OF AMERICA STATEMENTS AND THE G-MAIL.

10    THE COURT:  OKAY.

11    MR. WARD:  I CAN'T THINK OF ANYTHING ELSE.

12    THE COURT:  OKAY.  THEN YOU CAN MOVE ON TO ANOTHER

13  POINT.

14    MR. WARD:  YEAH.  I THINK THE POINT SHOULD BE

15  RE-EMPHASIZED THAT THERE'S BEEN NOTHING DESTROYED HERE.  I

16  THINK THE POINT SHOULD ALSO BE MADE THAT IN TERMS OF IPHONES

17  THAT WERE BROKEN BY THE BOYS BY THE SWIMMING POOL, THAT'S NOT

18  THE DEFENDANT'S FAULT.  THEY DIDN'T DO THAT INTENTIONALLY.  AND

19  AS TO THE OPERATING SYSTEM, WE'VE ALREADY POINTED OUT THAT THE

20  COMPUTER SLEUTHS SAYS THAT THEY RELOADED THE OPERATING SYSTEM

21  AND ALL DATA AS IS.  THE DEFENDANT CAN'T DO ANYMORE THAN THAT.

22  HE DID NOT INTENTIONALLY DESTROY ANY DATA.  HE DID NOT

23  INTENTIONALLY OVERRIDE THE OPERATING SYSTEM.  I DON'T BELIEVE

24  THAT'S THE WAY IT WORKS ANYWAY, AT LEAST MINE DOESN'T DO THAT.

25  I'M ON 11.4 NOW ON MY OPERATING SYSTEM, AND I HAVEN'T LOST ANY

1   DATA AT ALL.

2          THE COURT:  WELL, WHAT ABOUT THE ARGUMENT THAT IT IS

3   NOT REASONABLE FOR SOMEONE TO BE INVOLVED IN A LARGE LAWSUIT

4   LIKE THIS AND THE COURT ORDERED TO PROVIDE INFORMATION AND TO

5   ALLOW THOSE DEVICES TO BE GIVEN TO CHILDREN AND THEN DROPPED IN

6   POOLS AND DESTROYED WHILE THE CASE IS PROCEEDING?

7          MR. WARD:  WELL, IT'S A CELL PHONE.  A CELL PHONE IS

8   USED TO TALK TO PEOPLE.  THERE IS NO DATA ON THE CELL PHONE.

9   THE DATA IS KEPT ON-LINE.  SO, YOU KNOW, THE DEGREE OF CARE FOR

10  ONE'S CELL PHONE, I SUPPOSE, DEPENDS ON HOW VITAL SOMEONE

11  CONSIDERED IT TO BE.

12         THE COURT:  SO THERE ARE BACK-UPS OF THESE CELL

13  PHONES THAT WERE DESTROYED?

14         MR. BIJANI:  YOU WANT ME TO SAY?

15         MR. WARD:  YEAH, GO AHEAD.

16         THE COURT:  MR. WARD, YOU ARE THE LAWYER IN THE CASE.

17  I PREFER YOU TO DO THE ARGUMENT TODAY.

18         MR. WARD:  WERE THE CELL PHONES BACKED UP?

19         THE COURT:  THAT WAS THE QUESTION.

20         MR. WARD:  WELL, CLONED.  I DON'T BELIEVE THEY WERE.

21         THE COURT:  DID YOU CHECK?

22         MR. WARD:  DID I CHECK AT THE TIME TO SEE IF THEY

23  WERE --

24         THE COURT:  AS OF TODAY DO YOU KNOW IF THE CELL

25  PHONES WERE CLONED?

```
1            MR. WARD:  MY BELIEF IS THAT THEY WERE NOT.
2            THE COURT:  OKAY.  NOW, WHAT ABOUT THIS FACT THAT I
3    THINK IT WAS FOUR DAYS PRIOR -- YEAH, FOUR DAYS BEFORE THE
4    DELIVERY OF THE DEVICE WITH THE OPERATING SYSTEM THAT WERE
5    ALLEGEDLY OVERWRITTEN.  THERE WAS A SEARCH THAT WAS MADE BY ONE
6    OF YOUR CLIENTS FOR, DELETE YOUR ACTIVITY.  AND HOW DOES THAT
7    FIT IN WITH WHAT ELSE IS HAPPENING HERE?
8            MR. WARD:  I'M NOT FAMILIAR WITH THAT.  CAN YOU
9    REPHRASE?
10           THE COURT:  CERTAINLY.  THERE WAS A SEARCH THAT ONE
11   OF YOUR CLIENTS MADE ON THE COMPUTER FOUR DAYS PRIOR TO THE
12   COMPUTER BEING PRODUCED FOR THE FORENSIC EVALUATION, WHICH ALSO
13   HAD THE INFORMATION WIPED FROM IT, AND THAT SEARCH WAS, DELETE
14   YOUR ACTIVITY AND HOW DO YOU DELETE YOUR ACTIVITY OFF OF A
15   COMPUTER, AND THAT WAS MADE --
16           MR. WARD:  OH.
17           THE COURT:  -- FOUR DAYS BEFORE THE COMPUTER WAS
18   PRODUCED AND ALL THE INFORMATION WAS WIPED FROM IT.
19           MR. WARD:  YEAH, I REMEMBER THAT NOW.  THAT WAS DONE
20   BY MRS. BIJANI BECAUSE THE BOYS WERE PUTTING GAMES AND APPS ON
21   THE COMPUTER, AND SHE WANTED TO KNOW HOW TO GET RID OF THOSE.
22   THAT HAD NOTHING TO DO WITH THIS CASE AT ALL.
23           THE COURT:  OKAY.  NOW, ONE OF THE ISSUES THAT HAS
24   BEEN PRESENTED IS THAT WHEN YOU'RE ORDERED TO PROVIDE A LIST OF
25   ALL DEVICES THAT WERE USED DURING CERTAIN YEARS, THAT EVEN IF
```

1    THE DEVICES WEREN'T THERE, FOR EXAMPLE, IF IT WAS KNOWN WHAT

2    THE DEVICES WERE, THEN BACK-UPS COULD BE SEARCHED FOR AND

3    THINGS OF THAT NATURE.  AND NOT ALL OF THE DEVICES BEING

4    UTILIZED BY THE BUSINESS WERE IDENTIFIED IN RESPONSE TO THAT

5    COURT ORDER.

6          MR. WARD:  I REPORTED WHAT I WAS TOLD BY THE CLIENT,

7    YOUR HONOR.

8          THE COURT:  WELL, DO YOU ADMIT THAT THAT WAS NOW

9    PROVEN TO BE UNTRUE?  BECAUSE THERE'S, FOR EXAMPLE, A SAMSUNG

10   PHONE THAT WE HAVE SOME TEXT MESSAGES FROM, AND THAT WAS NOT

11   PROVIDED TO THE -- AS A RESPONSE.

12         MR. WARD:  DO I ADMIT THAT MY STATEMENT WAS NOT

13   CORRECT OR INCOMPLETE?  YES, I DO.  I TOLD THE OTHER SIDE WHAT

14   I KNEW.

15         THE COURT:  OKAY.  NOW, SOME OF THE OTHER ISSUES THAT

16   THE COURT NEEDS TO CONSIDER IN LOOKING AT WHETHER OR NOT TO

17   GRANT SANCTIONS ARE THE EXTENT OF THE PREJUDICE, WHETHER IT CAN

18   BE CURED, AND THE CULPABILITY OF THE PERSON THAT'S ALLEGED TO

19   HAVE SPOILED THE DATA, SPOLIATED THE DATA.  DID YOU WANT TO

20   ADDRESS ANY OF THOSE FACTORS?

21         MR. WARD:  WELL, YES.  AS WE'VE SAID, THIS BUSINESS

22   WAS RUN USING APPS WHERE THE DATA WAS ON-LINE.  THE DATA WAS

23   NOT STORED ON THE IPHONE.  THE DATA WAS NOT STORED ON THE

24   COMPUTER, SO THAT DATA IS ON-LINE.  THEY HAVE THE PASSWORDS.

25   OBVIOUSLY THAT CAN BE CURED.

```
 1              THE COURT:  OKAY.  KEEP ARGUING.

 2              MR. WARD:  YEAH, IF THEY CAN -- IN FACT, THEY CAN --

 3   IF -- THEY'VE ALWAYS BEEN ABLE TO AND INVITED TO EXAMINE ALL OF

 4   THAT DATA WITHOUT EVEN BEING SCREENED BY ME.  WE'VE DONE THAT

 5   THROUGHOUT.  WE HAVEN'T GONE THROUGH AND PICKED OUT THIS OR

 6   THAT WHATSOEVER.  WE'VE GIVEN THEM EVERYTHING THAT THERE IS,

 7   AND THEY CAN STILL DO THAT.

 8              THE COURT:  OKAY.  WELL, KEEP ARGUING.

 9              MR. WARD:  WE'VE PRODUCED THOUSANDS OF PAGES, YOUR

10   HONOR, FROM THIS TINY, ONE --

11              THE COURT:  MR. BIJANI, IF YOU'RE GOING TO SPEAK --

12   I'M PICKING UP BOTH OF YOU IN THE MICROPHONE, SO THEN I CAN'T

13   HEAR EITHER OF YOU.  SO THE PROBLEM IS THAT WHEN YOU'RE

14   SPEAKING, I'M GETTING IT IN THE MICROPHONE.

15              MR. WARD:  JUDGE, THIS IS A TINY, ONE-PERSON, MICRO

16   COMPANY.  AND WE'VE HAD AN EXPERT IN THIS CASE, MR. BREUNIG,

17   WHO HAS GIVEN HIS OPINION.  AND BASED ON HIS EXPERTISE AND

18   EXPERIENCE WITH HIS EMPLOYER, WASTE MANAGEMENT HAS 50,000

19   EMPLOYEES.  NOW, WHAT'S APPROPRIATE FOR WASTE MANAGEMENT AND

20   WHAT MR. BREUNIG THINKS IS REALLY NOT ALL THAT PERTINENT IN

21   THIS CASE.  WE'VE DONE WHAT WE COULD.

22              THE COURT:  WELL, I WILL TELL YOU I'M LESS CONCERNED

23   ABOUT MR. BREUNIG AND MORE CONCERNED ABOUT VIOLATIONS OF MY

24   ORDERS, AND THAT'S REALLY WHERE THIS IS.  IT'S NOT WHAT

25   MR. BREUNIG SAID.  IT'S I ORDERED A LIST OF DEVICES, BUT THE
```

1    LIST WAS INCOMPLETE.  I ORDERED COMPUTERS TO BE PRODUCED FOR

2    FORENSIC SEARCHES.  THEY WERE WIPED.  I ORDERED DOCUMENTS TO BE

3    PRODUCED.  IT APPEARS THAT THEY WERE NOT PRODUCED.  THAT'S NOT

4    MR. BREUNIG.  THAT IS COMPLIANCE WITH COURT ORDERS.

5         MR. WARD:  WE HAVE PROVIDED PHYSICALLY THOUSANDS AND

6    THOUSANDS OF DOCUMENTS, BUT LET ME ADDRESS SOMETHING ABOUT --

7    YOUR HONOR USED THE WORD (VERBATIM), THE COMPUTER WAS WIPED.

8    THE COMPUTER WAS REPAIRED BY COMPUTER SLEUTHS --

9         THE COURT:  WELL, LET ME SAY IT DIFFERENTLY.  IT DID

10   NOT HAVE ANY INFORMATION ABOUT THE TIME PERIOD THIS CASE

11   COVERED OR ANY DOCUMENTS RESPONSIVE.  IT WAS THE BUSINESS

12   COMPUTER AND IT NO LONGER CONTAINED ANY OF THE RELEVANT

13   BUSINESS-RELATED RECORDS.

14        MR. WARD:  THOSE BUSINESS RECORDS WERE ON-LINE TO

15   START WITH, BUT IT'S NOT THE DEFENDANT'S FAULT THAT WHEN THEY

16   HAD THEIR COMPUTER REPAIRED BY EXPERTS, THAT THE OPERATING

17   SYSTEM HAD TO BE RELOADED.  AND IT SAYS, AND ALL DATA RE --

18   RELOAD OPERATING SYSTEM AND ALL DATA AS IS.  THAT'S WHAT THEY

19   TRIED TO DO.

20        THE COURT:  THE TIMING IS WHAT CONCERNED THE COURT

21   BECAUSE ALL OF THAT HAPPENED AFTER YOUR CLIENT WAS ORDERED TO

22   PRESERVE THIS FOR THIS SEARCH TO HAPPEN.  THE TIMING IS VERY

23   SUSPICIOUS GIVEN THAT IT HAPPENED IN THE SMALL AMOUNT OF TIME

24   THAT THIS WAS TO BE DONE.

25        MR. WARD:  THE DEFENDANT IS NOT A COMPUTER EXPERT.

1  THE DEFENDANT DIDN'T KNOW ANYTHING ABOUT OPERATING SYSTEMS OR

2  RELOADING THEM.  HE KNEW THAT HIS COMPUTER DIDN'T WORK AND HE

3  TOOK IT IN, AND IT SAYS RELOAD ALL DATA.  THAT'S WHAT THE --

4  THAT'S WHAT COMPUTER SLEUTHS SAYS.  THERE'S NO INTENTIONAL

5  DESTRUCTION OF DATA WHATSOEVER.

6          THE COURT:  OKAY.  YOU CAN KEEP ARGUING.

7          MR. WARD:  I'VE -- MY -- I JUST WANT TO MAKE THE --

8  JUST THE FINAL POINT THAT THERE'S BEEN NO INTENTIONAL

9  DESTRUCTION.  THERE'S BEEN A TREMENDOUS AMOUNT OF PRODUCTION.

10 THE DATA IS STILL THERE.  IT'S ALL ON-LINE AS THE PLAINTIFF HAS

11 ADMITTED.  IT'S THERE.  THEY CAN GET IT UNFETTERED.  WE'LL LET

12 THEM DO THAT.  THAT'S IT.

13          THE COURT:  I THINK THE PROBLEM WITH THAT, MR. WARD,

14 IS THAT LITERALLY YEARS AGO I ASKED YOU TO PRODUCE THAT TO

15 THEM.  IT'S NOT THEIR OBLIGATION TO GET ON YOUR SYSTEMS AND DO

16 THOSE SEARCHES.  THE WAY THAT DISCOVERY WORKS IS THAT ONE SIDE

17 SENDS OUT REQUESTS TO THE OTHER SIDE, THEY GO AND PULL THE

18 RESPONSIVE DOCUMENTS AND PRODUCE THEM.  NOW, IF THERE'S AN

19 AGREEMENT IN PLACE, THAT CAN BE A DIFFERENT SITUATION.  BUT TWO

20 YEARS AFTER THE COURT ORDERED YOU TO DO THAT, NOW SAYING THAT

21 THE PLAINTIFF SHOULD GO ON AND SEARCH YOUR DOCUMENTS TO SEE

22 WHAT'S RESPONSIVE, THAT'S VERY TROUBLING GIVEN WHERE WE ARE IN

23 THE CASE AND THE FACT THAT I ORDERED YOU TO DO THIS BEFORE.

24          MR. WARD:  WELL, THE PLAINTIFF HASN'T INDICATED

25 ANYTHING THAT THEY'RE LACKING.  WE BELIEVE THAT WE'VE PRODUCED

1    EVERYTHING THAT WE HAVE.

2            THE COURT:  BUT, SEE, WHAT CONCERNS ME IS THAT IT'S

3    NOT CLEAR THAT YOU'VE SEARCHED THOSE AREAS TO DETERMINE IF

4    EVERYTHING THAT IS RESPONSIVE HAS BEEN PRODUCED, AND THAT'S

5    WHAT IS -- I COME BACK TO, IS THAT I KEEP HEARING YOU SAY THAT

6    THEY CAN GO ON THERE AND LOOK, BUT I DON'T HEAR YOU SAY, WHEN I

7    ORDERED YOU TO DO A DOUBLE CHECK AND TO MAKE TRIPLE SURE

8    EVERYTHING HAD BEEN PRODUCED, THAT YOU YOURSELF WENT INTO ALL

9    THESE DATABASES AND DOCUMENTS AND STORAGE PLACES AND MADE SURE

10   THAT YOU WERE COMPLYING WITH THE COURT'S ORDER.

11           MR. WARD:  I BELIEVE THAT THE DEFENDANT HAD DONE THAT

12   AND I WAS ASSURED THAT THAT HAD HAPPENED.

13           THE COURT:  OKAY.

14           MR. WARD:  YEAH.  SO I HAVE NOTHING FURTHER AT THIS

15   TIME, YOUR HONOR.  MR. BIJANI HAS BEEN WHISPERING IN MY EAR.  I

16   BELIEVE THAT HE WOULD LIKE TO ADDRESS THE COURT, IF THE COURT

17   WOULD PLEASE.

18           THE COURT:  OKAY.  YOU'VE GOT A FEW MINUTES,

19   MR. BIJANI.  IF YOU WANTED TO SPEAK INTO THE MICROPHONE, I WILL

20   LISTEN TO YOU.

21           MR. BIJANI:  FIRST OF ALL, I WOULD LIKE TO SAY WE ARE

22   PROUD TO BE AMERICAN MANUFACTURING AND PACKAGING COMPANY HERE

23   LOCALLY IN GAINESVILLE, GEORGIA.  WE CURRENTLY GIVE WORK TO

24   ABOUT 150 WOMANS (PHONETIC) TO TAKE HOME, WORK.  THEY PACKAGE

25   IT.  THEY MAKE LIVING OUT OF IT.  SO THAT IS THE MOST IMPORTANT

```
 1   POINT.  AND THE -- AND REGARDING YOUR QUESTION ON THE
 2   INFORMATION, AND TO THE BEST OF MY KNOWLEDGE I'VE FOLLOWED THE
 3   COURT ORDERS AND I GAVE THEM MAXIMUM AMOUNT OF ALL THE
 4   INFORMATION THAT WAS ON THE APP, HARD COPY PRINTED FOR, LIKE,
 5   QUICKBOOKS SOFTWARE, THE SALES INVOICES, BANK OF AMERICA
 6   STATEMENT, YOU KNOW, THE GENERAL LEDGER.  THEY GOT IT FROM THE
 7   ACCOUNTANT, TAX RETURNS, FINANCIAL.  SO MOST OF THE ASPECTS
 8   THAT'S SIGNIFICANT ENOUGH FOR THE CASE HAS BEEN PRODUCED TO THE
 9   BEST OF MY KNOWLEDGE.  TO BE FIRM ON YOUR QUESTION, THAT IS THE
10   ANSWER.  AND, MA'AM, AT THE END OF THE DAY, I MEAN, THIS IS A
11   TRADE DRESS CASE.  IF YOU LOOK AT IT RIGHT HERE, I MEAN, JUST
12   BY LOOKING AT IT, WE CAN SAY IT'S TOTALLY DIFFERENT BOXES.
13   IT'S TWO DIFFERENT BOXES AND IT'S TOTALLY DIFFERENT.  SO, I
14   MEAN, WHAT'S HAPPENING HERE IS, LIKE, YOU KNOW, THEY JUST
15   PRESSURING US AND HARASSING US, JUST DRAGGING THE CASE FOR A
16   LONGER PERIOD OF TIME ON THE NAME OF DISCOVERY.  THAT'S WHAT'S
17   HAPPENING HERE, MA'AM.  THAT'S WHAT I BELIEVE.  EVEN
18   MR. MEROLLA USES MY DEPOSITION SAYING THAT I USED THE
19   COMPUTER -- DEPOSITION STATEMENT HE'S CLAIMING THAT I USED MY
20   COMPUTER, BUT IN THE DEPOSITION IF YOU GO AND READ THE WHOLE
21   PARAGRAPH, IT'S A CONVERSATION ABOUT I USED MY COMPUTER TO
22   ACCESS THE QUICKBOOKS APPS, WHICH HE'S NOT TRYING TO TELL YOU.
23   HE'S JUST SAYING, OH, HE USED THE COMPUTER FOR THE BUSINESS.
24   BUT THAT'S NOT TRUE.  THE DEPOSITION, IF YOU READ IT CAREFULLY,
25   IT'S A COMPUTER I USED TO ACCESS THE QUICKBOOKS ON-LINE
```

1  SOFTWARE.  AND HIS QUESTION REGARDING WAS QUICKBOOKS ON-LINE

2  SOFTWARE, AND I ANSWERED HIM, IF THERE WAS ANY TIME TRACKING ON

3  THAT SOFTWARE, I WOULDN'T KNOW THAT IF THERE WAS A TIME

4  TRACKING ON THAT SOFTWARE.  SO THEY JUST TWISTING THE WORDS AND

5  USING IT INTO A DIFFERENT DIRECTION TRYING TO WIN ON A SANCTION

6  BECAUSE THEY CLEARLY KNOW THAT THE TRADE DRESSES ARE SO

7  DIFFERENT, IF WE HAVE A JURY TRIAL, THEY DON'T HAVE THE CHANCES

8  ON THAT.  AND THE END OF THE DAY, IF A PLAINTIFF CHANGES THEIR

9  OWN TRADE DRESS THREE TIMES WITHIN THE COURSE OF A CASE, I

10  BELIEVE THEY DON'T HAVE A RIGHT TO FILE ON A TRADE DRESS

11  BECAUSE THEY'RE TRADE DRESS HAD BEEN CHANGED SO MANY TIMES BY

12  THEMSELVES.  IT'S RIGHT HERE.  SO AT THE END OF THE DAY, I

13  MEAN, WE HAVE TO GO BY THE HARD EVIDENCE AND THE TRUTH AND THE

14  FACTS OF WHAT WE SEE RIGHT IN FRONT OF US.  IF YOU LOOK AT

15  THESE BOXES, THEY'RE TWO TOTALLY DIFFERENT TRADE DRESS

16  DIFFERENCE (VERBATIM).  YOU CAN FIGURE IT OUT VERY EASILY, YOU

17  KNOW.  AND IF YOU LOOK AT THOSE, I MEAN, THERE ARE THREE

18  DIFFERENT TRADE DRESS (VERBATIM) USED BY THE PLAINTIFF WITHIN

19  THE COURSE OF THE CASE.  SO, I MEAN, THIS IS JUST CLEARLY

20  HARASSMENT, MA'AM.

21          THE COURT:  OKAY.  THANK YOU.

22      MR. MEROLLA.

23          MR. MEROLLA:  THANK YOU, YOUR HONOR.  WITH RESPECT TO

24  THE MERITS, YOU KNOW, I CAN REPORT TO YOU THAT WE HAVE MANY

25  INSTANCES OF ACTUAL CONFUSION, AND WE'VE DISCLOSED THOSE

```
1    DURING -- OVER THE LAST 18 MONTHS OR SO AS THEY'RE COMING IN.
2    THERE'S A LOT OF EVIDENCE OUT THERE OF ACTUAL CONFUSION BETWEEN
3    MY CLIENT'S PRODUCT AND THEIR PRODUCT, BUT WE'RE NOT HERE ON
4    THE MERITS.  WE'RE HERE ON THE DISCOVERY MATTERS.  AND ON THE
5    ISSUE OF INTENT, I PUT IT IN ONE OF THE PAPERS.  I FORGET IF I
6    WAS RESPONDING TO THEM OR IN THE SANCTIONS MOTION.  IN THE
7    INITIAL DISCLOSURES WHEN THEY HAD MR. LILENFELD REPRESENT THEM
8    AND BEFORE I WAS INVOLVED IN THE CASE IN 2017, I WANT TO SAY IT
9    WAS JUNE, JULY 2017, THEY IDENTIFIED SHENZHEN KINDVAST
10   COMMUNICATIONS.  THE EVIDENCE -- AND THEY PRODUCED SOME TEXT
11   MESSAGES FROM THAT CELL PHONE THAT THEY DIDN'T PROVIDE OR
12   IDENTIFY WHEN WE WENT INTO THIS FORENSIC EXAMINATION TWO-PLUS
13   YEARS LATER.  SO, I MEAN, THAT GOES RIGHT TO THE HEART OF ONE
14   OF THE ELEMENTS OF INFRINGEMENT, INTENT, WHAT DID THEY DO.  AND
15   THEY'VE ADMITTED THAT THEY DIDN'T PRODUCE IT OR, YOU KNOW, THAT
16   THEY LOST IT, THEY HAVE SOME EXPLANATION.  AND THEY HAVE NO
17   OBJECTIVE BASIS TO ARGUE THAT THAT WAS REASONABLE TO JUST TAKE
18   A PHONE THAT WAS USED, DISCARD IT IN LIGHT OF THE DISCOVERY
19   OBLIGATIONS.  WE HAVE MR. BREUNIG THAT SAYS, YOU KNOW, THE GOOD
20   PRACTICES SAY THAT IF YOU'RE IN LITIGATION AND YOU HAVE
21   SOMETHING THAT HAS DISCOVERABLE MATERIAL, YOU PRESERVE IT.  YOU
22   DON'T GO AHEAD AND JUST THROW IT AWAY.  THEY TALK ABOUT, YOU
23   KNOW, THE "HOW TO DELETE THINGS FROM YOUR PHONE" COMES FROM
24   MRS. BIJANI.  I DON'T THINK THERE'S A DECLARATION FROM HER.
25   THIS IS ALL THIRD-PARTY HEARSAY THAT THEY COULD HAVE -- I MEAN,
```

```
 1   THIS THING'S BEEN OUT THERE SINCE, I WANT TO SAY, SEPTEMBER IN
 2   TERMS OF THE MOTION, THE ORIGINAL MOTIONS.  I THINK
 3   SEPTEMBER 19TH IS WHEN WE FIRST FILED THE MOTION FOR SANCTION,
 4   AND THERE'S BEEN SOME ORDERS.  THEY'VE HAD A YEAR-AND-A-HALF,
 5   TWO-PLUS -- NEARLY TWO YEARS TO GET THEIR EVIDENCE AND THEIR
 6   JUSTIFICATION IN LINE, AND THEY HAVEN'T.  AND WITH RESPECT TO,
 7   YOU KNOW, WE PRODUCED EVERYTHING, THEY DIDN'T PRODUCE
 8   EVERYTHING.  OKAY.  WE HAD TO GO AND SUBPOENA THEIR
 9   ACCOUNTANTS.  WE GOT THE QUICKBOOKS DATA FROM THE ACCOUNTANTS.
10   WE GOT THE BANK STATEMENTS FROM THE ACCOUNTANTS.  THEY GIVE A
11   LAUNDRY LIST -- AND I'M LOOKING AT DOCUMENT 202-3.  IT'S ONE OF
12   THESE E-MAILS.  IT LOOKS LIKE IT'S FROM MR. BIJANI TO MR. WARD.
13   AND THEY JUST PRODUCED IT IN ONE OF THEIR FILINGS.  BUT I CAN
14   TELL YOU THAT -- AND THERE'S A LIST OF, IT LOOKS LIKE, 13.  HE
15   SAYS, I HAVE STATED THIS VERY, VERY CLEARLY IN DEPOSITION ALSO.
16   AND THEN HE GIVES A LIST OF 13.  QUICKBOOKS, ON-LINE SERVICES,
17   GO CLOVER ON-LINE SERVICE.  I HAVE NO IDEA WHAT GO CLOVER IS.
18   I DIDN'T GET -- I DON'T BELIEVE I GOT ANYTHING FROM THEM ABOUT
19   GO CLOVER.  G-MAIL ON-LINE SERVICE.  WE GOT SOME G-MAILS, BUT
20   THEN WE -- YOU KNOW, WE SUBPOENAED GOOGLE, AND THERE SEEMS TO
21   BE A -- DELETED SOME E-MAILS IN TERMS OF THAT -- THE RECORD
22   THAT GOOGLE GOT FROM US YOU REFERENCED IN ONE OF YOUR ORDERS.
23       THE NEXT ONE, SCANNER ON-LINE SERVICE.  I HAVE NO IDEA
24   WHAT THAT MEANS.  MESSAGING APPS, CHINA APPS ON-LINE SERVICES.
25   I HAVE NO IDEA WHAT THAT IS.  BANK OF AMERICA ON-LINE APP.  AND
```

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

1   LET ME SAY THIS BEFORE I GET TO THE END OF THIS LIST.  WE WERE

2   NEVER PROVIDED ANY PASSWORDS.  THE -- I BELIEVE TO GET INTO THE

3   COMPUTER, THERE IS A PASSWORD.  AND I BELIEVE THAT THEY DID

4   CONVEY THAT TO MR. BREUNIG.  THAT IS WHOLLY DIFFERENT THAN

5   GETTING INTO A SPECIFIC, YOU KNOW, EITHER ON-LINE WEBSITE WITH

6   A USERNAME AND PASSWORD THAN JUST OPENING UP YOUR COMPUTER AND

7   HAVING THAT INITIAL PASSWORD.  I DON'T THINK ANY OF THESE

8   PASSWORDS WERE EVER PROVIDED.

9       AMAZON APP TO BUY REQUIRES MACHINE FOR WAREHOUSE OR PUMP

10   TO TRANSFER LIQUID.  I HAVE NO IDEA WHAT THAT -- WHAT THEY'RE

11   TALKING ABOUT THERE.  PAYPAL APP.  I DON'T THINK I RECEIVED ANY

12   DOCUMENTS REFERENCING PAYPAL AND WHATEVER TRANSACTIONS MAY HAVE

13   GONE THROUGH PAYPAL.  ALIBABA WHOLESALE.  I DON'T THINK I EVER

14   RECEIVED ANYTHING FROM ALIBABA.  SKYPE APP VIDEO.  WE DIDN'T

15   RECEIVE ANY VIDEOS FROM THEM.  SNAPCHAT APP, WE DIDN'T RECEIVE

16   ANYTHING FROM SNAPCHAT.  AND MANY, MANY MORE USED FOR BUSINESS.

17       SO -- AND THIS, IT LOOKS LIKE, SEPTEMBER 2020, DOCUMENT

18   202-3, HE'S SAYING THERE'S MANY, MANY MORE, AND HE'S NOT EVEN

19   IDENTIFYING THEM HERE.  I'M REPRESENTING TO THE COURT WE DIDN'T

20   GET ANY OF THAT.  AND IF THAT DATA DOES EXIST AS, YOU KNOW, YOU

21   JUST MENTIONED, THEY'VE AFFIRMED THAT THEY PRODUCED EVERYTHING

22   BACK IN MAY OF 2019, AND HERE WE ARE.  I DON'T KNOW IF IT

23   EXISTS.  I KNOW THAT WE DIDN'T GET IT AND I KNOW THAT, YOU

24   KNOW, THIS EXCUSE THAT, WELL, SHAME ON THEM, ALL THAT DATA IS

25   THERE, THAT GOES DIRECTLY TO, YOU KNOW, ADMITTING THAT THEY,

1    YOU KNOW, I BELIEVE THAT THEY WILLFULLY VIOLATED THE DISCOVERY

2    ORDERS.  IN SOME OF THE BRIEFINGS I REFERENCE RULE ONE, RULE

3    11, RULE 26 ABOUT HOW PARTIES AND COUNSEL NEED TO TAKE A

4    REASONABLE INVESTIGATION, WORDS TO THAT EFFECT, IN

5    PARTICIPATING IN DISCOVERY.  I BELIEVE THAT THERE'S SOME

6    ELEVENTH CIRCUIT DECISIONS WHERE THE PANEL WILL OPINE THAT

7    DISCOVERY REQUIRES GOOD FAITH BETWEEN THE ATTORNEYS.  IT'S NOT,

8    YOU KNOW, YOU'VE GOT TO GO FIND IT.  IT'S THERE NEEDS TO BE

9    SOME COOPERATION, OTHERWISE, THE WHOLE CIVIL SYSTEM WILL SHUT

10   DOWN.  AND WHAT WE'RE HEARING TODAY IS THAT, WELL, THEY COULD

11   HAVE GOTTEN IT THEMSELVES, THEY COULD HAVE WENT TO THIRD

12   PARTIES WHEN, NUMBER ONE, THE IDEA THAT THEY GAVE US USERNAMES

13   AND PASSWORDS AND JUST GO AT IT AND GO LOOK AT WHATEVER DATA

14   YOU WANT OUT THERE, IS JUST FALSE.  THAT NEVER HAPPENED.

15       REGARDING THIS EXERCISE, YOU WENT TO GREAT PAINS AND

16   LENGTHS TO SAY, LOOK, I'M GOING TO LET THIS FORENSIC GET IT

17   DIRECTLY FROM THE DEFENDANTS, HE'S GOING TO DO HIS ANALYSIS,

18   AND THEN I'M GOING TO GIVE THE DEFENDANTS AN OPPORTUNITY TO

19   MARK STUFF CONFIDENTIAL, WHATEVER DESIGNATION, BEFORE I GOT TO

20   LOOK AT IT.  SO THERE WERE THESE SAFEGUARDS IN PLACE FOR THEM

21   TO DO THE EXERCISE.  THEY DIDN'T, YOU KNOW, MARK ANYTHING.  AND

22   IT TURNS OUT THAT THERE WAS NOTHING OF REALLY VALUE IN THE TWO

23   DEVICES THAT WE WERE GIVEN BASED ON, YOU KNOW, IT SOUNDS LIKE

24   YOU'RE SPOT ON IN TERMS OF THE TIMELINE AND THE TIMING.  AND,

25   YOU KNOW, THE CELL PHONE, I MEAN, THAT WAS, YOU KNOW, WHEN THE

1  ORIGINAL MOTION FOR SANCTIONS AFTER THE DEPOSITIONS TOOK PLACE,

2  A NEW CELL PHONE WAS PUT INTO USE, AND THEN WE HAD SOME

3  MULTIPLE ORDERS AND WE GOT THE FORENSIC ORDER, AND THEN THEY

4  CHANGED THE OPERATING SYSTEM, YOU KNOW, ON THE EVE OF PRODUCING

5  THE NEW LAPTOP.

6       JUST A COUPLE OF OTHER POINTS.  COMPUTER SLEUTHS.  THEY'VE

7  PRODUCED A SINGLE PIECE OF PAPER, NOT EVEN A STATEMENT, FROM

8  SOMEBODY -- I DON'T EVEN KNOW WHO COMPUTER SLEUTHS IS.  AND

9  THEY WANT TO ARGUE THAT THEY RELIED ON THE TECHNICAL

10 PROFICIENCY ON AN INVOICE OF COMPUTER SLEUTHS.  THEY HAVEN'T

11 IDENTIFIED WHO AT COMPUTER SLEUTHS DID IT.  THEY COULDN'T

12 PRODUCE THE DECLARATION FROM COMPUTER SLEUTHS DETAILING EXACTLY

13 WHAT THEY DID.  THEY DIDN'T.  THEY SUBMITTED SOME INVOICE FOR,

14 I WANT TO SAY IT WAS UNDER $200, WHATEVER IT IS, THE DOCUMENT'S

15 IN THE RECORD.  BUT THAT'S NOT EVIDENCE IN TERMS OF WHAT WE'RE

16 DEALING WITH HERE.  I MEAN, FOR THEM, FOR COUNSEL TO ARGUE

17 COMPUTER SLEUTHS TOLD MY CLIENT X, Y AND Z, THAT'S NOT

18 SOMETHING FOR THE COURT TO HANG ITS HAT ON AS TO WHETHER OR NOT

19 THAT WAS REASONABLE WHEN WE HAVE MR. BREUNIG SAYING, YOU'RE IN

20 LITIGATION, YOU GOT AN ORDER TO TURN THINGS OFF, IF THERE'S

21 SOME PROBLEM WITH THE DEVICE, YOU PRESERVE IT.  THEY HAVE NO

22 EVIDENCE TO COUNTER THAT OPINION, AND THE COURT'S JOB, AS I

23 MENTIONED IN THE BEGINNING, IS WHAT'S THE OBJECTIVE STANDARD.

24 IT'S NOT WHETHER MR. BIJANI FELT LIKE, YOU KNOW, HE WAS AT

25 LIBERTY TO DO THINGS AND IN HIS MIND IT WAS REASONABLE.  THE

1   ANALYSIS FOR THE COURT IS, WAS THAT OBJECTIVELY REASONABLE.

2   AND THERE'S NOTHING BUT JUST PURE ARGUMENT ON THEIR SIDE THAT

3   HE THOUGHT IT WAS REASONABLE.  AND THAT'S NOT THE STANDARD AND

4   WE WENT THROUGH GREAT PAINS AND LENGTHS AND EXPENSE TO RETAIN

5   MR. BREUNIG, AND HIS IS NOT REBUTTED WHATSOEVER AS WE SIT HERE

6   TODAY.  YOU KNOW, YOU HAVE AN ADMISSION HERE IN THIS HEARING

7   THAT THEIR IDENTIFICATION OF WHAT DEVICES WERE USED IN THE

8   BUSINESS SINCE APRIL 2017 WHEN THIS CASE STARTED WAS INCORRECT.

9   SO THERE'S AN ADMISSION THAT THERE WAS A FAILURE TO COMPLY WITH

10  YOUR ORDER TO IDENTIFY THE DEVICES.

11      I BELIEVE THAT'S ALL THAT I HAVE.  ONE LAST THING.  IN

12  TERMS OF THE LAUNDRY LIST OF THE APPS, ONE OF THE DOCUMENTS --

13  AND I BELIEVE IT'S REFERENCED -- IT MAY BE REFERENCED IN ONE OF

14  MR. BIJANI'S STATEMENTS.  HE HAS THESE INVOICES THAT WERE JUST

15  COMPUTER GENERATED FROM QUICKBOOKS.  THERE'S AN INVOICE OPTION,

16  AND THAT'S THE BULK OF WHAT THEY'VE BEEN PRODUCING TO US, THAT,

17  YOU KNOW, WE'VE RUN SOME ANALYSIS, AND IN TERMS OF THE BANK

18  STATEMENTS, YOU CAN'T REALLY MATCH THE DEPOSITS THAT ARE IN

19  BULK TO ANY PARTICULAR CUSTOMER, AND THERE'S -- BUT THAT'S FOR

20  ANOTHER PRESENTATION.  BUT MY POINT IS ON ONE OF THOSE

21  INVOICES, HE PUTS IN HERE ZELLE.  AND I BELIEVE IN ONE OF HIS

22  STATEMENTS THAT IS GIVEN IN CONNECTION WITH THIS MOTION HE

23  TALKS ABOUT HOW THE CELL PHONE AND CHANGING THE CELL PHONE SO A

24  COMPUTER CAN PAY HIM THROUGH THE ZELLE APP, WHICH IS A MONEY

25  TRANSFER -- I DON'T KNOW IF THE COURT'S FAMILIAR WITH ZELLE.

1          THE COURT:  NOT ZELLE.

2          MR. MEROLLA:  DO YOU KNOW VENMO?

3          THE COURT:  YES.

4          MR. MEROLLA:  I THINK IT'S A VENMO.  I DON'T HAVE

5   EITHER OF THEM.  I'M OUT OF THAT WHOLE THING, BUT IT'S SIMILAR

6   TO A VENMO THING.  THEY DIDN'T PRODUCE ANYTHING FROM ZELLE.  I

7   MEAN, ZELLE WOULD BE, YOU KNOW, HARD DATA ON WHAT IS, YOU KNOW,

8   COMING THROUGH AND WHETHER OR NOT THAT'S EVEN LINKED TO THE

9   BANK ACCOUNTS THAT THEY'VE GIVEN US.  BUT, AGAIN, HE -- YOU

10  KNOW, HE HAS THIS LIST OF 13.  I THINK I'VE MARKED OFF SEVEN

11  THAT I DON'T THINK I'VE RECEIVED A SINGLE DOCUMENT FROM, AND

12  ADD ZELLE TO THAT, AND HERE WE ARE.  SO, YOU KNOW, AGAIN, JUST

13  KIND OF IN SUMMARY HERE, THEY'RE SAYING THAT SHAME ON US FOR

14  NOT ASKING FOR THE PASSWORDS.

15       WELL, LET ME BACK UP.  NUMBER ONE, THEY'RE SAYING THE FACT

16  THAT THE O.S., THE OPERATING SYSTEM, WAS TRANSFERRED, AND WE

17  GAVE UP A CELL PHONE THAT WAS ONLY IN EFFECT FROM

18  SEPTEMBER 2019 DOESN'T MATTER BECAUSE THERE WAS NO INFORMATION

19  ON THERE TO BEGIN WITH.  OKAY.  AND THAT'S BASED ON THEIR

20  TESTIMONY.  SO WE NEED TO EITHER BELIEVE THEM AT FACE VALUE OR

21  LOOK AT THE -- YOU KNOW, THE TOTALITY OF THE CIRCUMSTANCES AND

22  THEN, YOU KNOW, REVISIT, WELL, WHY WERE WE HERE?  BECAUSE

23  THERE'S INDICIA THAT SOME THINGS WERE PRODUCED AND SOME THINGS

24  WEREN'T, AND SO THAT'S NOT -- YOU KNOW, TAKING THEM AT FACE

25  VALUE THAT, DON'T WORRY ABOUT IT, THE OPERATING SYSTEM

```
 1   OVERWRITTEN, NO INFORMATION BECAUSE I SAY SO.  AND THEN THE
 2   SECOND PART OF THIS IS THEY SAY, WELL, ALL THE INFORMATION'S
 3   OUT THERE ON THE APPS AND WE GAVE THEM THE PASSWORD, USERNAME
 4   AND PASSWORDS.  NUMBER ONE, THAT'S INCORRECT.  THAT WAS NEVER
 5   GIVEN TO US.  WE WERE NEVER GIVEN CARTE BLANCH TO GO IN AS, I
 6   BELIEVE, YOU HAVE -- YOU KNOW, YOU CHARACTERIZED IT TO GO INTO
 7   MR. BIJANI'S SEPARATE ACCOUNTS AND ALL THESE APPS, AS HE PUTS
 8   IT, AND RIFLE THROUGH HIS TRANSACTION HISTORY.  THAT NEVER
 9   HAPPENED AS A FACTUAL MATTER.  BUT EVEN IF IT DID OR EVEN IF IT
10   DOES IN THE FUTURE, THAT'S A VIOLATION OF THE REPRESENTATION
11   THAT YOU MADE THEM GO THROUGH THE EXERCISE BACK IN 2019 -- I
12   THINK IT'S MAY OF 2019 -- TO GO BACK, DO A SECONDARY SEARCH,
13   MAKE SURE YOU'VE GIVEN THEM EVERYTHING.  YES, I DID.  AND THEN,
14   YOU KNOW, HERE WE ARE, AND IT'S KIND OF AN I.V. DRIP, YOU KNOW,
15   MATRICULATING FORWARD, AND HERE WE ARE HERE TODAY.  SO FOR THEM
16   TO COME IN TODAY AND SAY, YOU KNOW, THEY HAD -- THEY HAVE
17   ACCESS TO ALL THIS INFORMATION AND WE'LL GIVE IT TO THEM NOW, I
18   MEAN, YOU HAVE WIDE DISCRETION ON THIS, BUT I BELIEVE, AS I
19   SAID, WE'RE FULL CIRCLE.  I MEAN, DID YOU GIVE EVERYTHING?
20   YES, I DID.  AND NOW HERE WE ARE TWO-PLUS YEARS LATER, AND IT'S
21   CLEAR THAT THEY DIDN'T.  AND THEN THEY AFFIRMATIVELY DESTROYED
22   EVIDENCE IN TERMS OF THE OPERATING SYSTEM AND THE OTHER PHONES.
23   AND, AGAIN, I'LL GO BACK TO THAT ON THE -- ON THE INTENT ISSUE
24   AND THE COMMUNICATIONS WITH THE CHINESE MANUFACTURERS, SHENZHEN
25   KINDVAST.  THEY IDENTIFIED IT IN THEIR INITIAL DISCLOSURES IN
```

```
 1    EITHER JUNE OR JULY OF 2017.  SO THERE WAS AN INTERIM

 2    INJUNCTION ORDER.  THEY DID SOME CHANGES.  THOSE

 3    COMMUNICATIONS, IF THOSE WERE AS MR. BIJANI TESTIFIES, THOSE

 4    ARE DONE VIA TEXT MESSAGE.  AND, YOU KNOW, SOME OTHER APPS,

 5    THOSE COMMUNICATIONS SHOULD HAVE BEEN PRESERVED.  AND HE'S

 6    SAYING, WELL, I JUST -- YOU KNOW, I THREW OUT THAT SAMSUNG

 7    PHONE.  THAT -- I MEAN, THIS ISN'T PRE-SUIT DESTRUCTION OF

 8    EVIDENCE OR, YOU KNOW, DISPOSING OF EVIDENCE, LAWSUIT FILED

 9    APRIL '17, OBLIGATIONS ATTACH, AND HERE WE ARE.  SO UNLESS YOU

10    HAVE ANY QUESTIONS FOR ME, THANK YOU FOR YOUR TIME.

11              THE COURT:  OKAY.

12              MR. WARD:  YOUR HONOR, MAY I HAVE JUST ONE MINUTE?

13              THE COURT:  YES.

14              MR. WARD:  FIRST OF ALL, THE INVOICE FROM COMPUTER

15    SLEUTHS, IT'S NOT HEARSAY.  IT'S A BUSINESS RECORD KEPT IN THE

16    ORDINARY COURSE OF BUSINESS AND RELIED ON BY THE DEFENDANTS.

17    AND WE'VE READ IT SEVERAL TIMES.  IT CERTAINLY DEMONSTRATES

18    THAT THERE WAS NO WILLFUL DESTRUCTION OF ANY DATA BY THE

19    DEFENDANTS.

20       THE SECOND THING IS, TO JUST CORRECT WHAT WE'VE HEARD, THE

21    PLAINTIFF WAS INVITED TO SUBPOENA THE ACCOUNTANT, AND THEY

22    AGREED.  IF THEY HAD SAID, WELL, NO, WE DON'T WANT TO SUBPOENA

23    THE ACCOUNTANT, WE WANT TO TAKE HIS DEPOSITION --

24              THE COURT:  WELL, MR. WARD, WHAT YOU'RE FORGETTING IS

25    THAT YOUR CLIENT HAD THE OBLIGATION FIRST TO PRODUCE ALL THE
```

```
1   INFORMATION FROM THE ACCOUNTANT, THAT THAT WAS YOUR OBLIGATION

2   TO BEGIN WITH, NOT THAT THEY NEEDED TO TELL YOU TO DO THAT,

3   THAT THEY DID THAT AFTER THEY DIDN'T GET THE INFORMATION.  BUT

4   IT WAS YOUR OBLIGATION TO CONTACT THE ACCOUNTANT AND TO GET

5   THAT INFORMATION PRODUCED AT THE BEGINNING.

6           MR. WARD:  YEAH, WE BELIEVE THAT WE DID AND WE HAD AN

7   AGREEMENT THAT THEY WOULD GET IT DIRECTLY FROM THE ACCOUNTANT.

8   AND THAT WAS NO DIFFERENT THAN GETTING IT FROM US EXCEPT THAT

9   THEY WERE ASSURED THEN THAT THEY WOULD GET EVERYTHING.  AND

10  THEY AGREED TO DO THAT.  SO TO NOW SAY THEY DIDN'T AGREE, WELL,

11  THEY DID AGREE.

12      AS TO THE APPS THAT SUPPOSEDLY THE PLAINTIFF DIDN'T GET,

13  THE PAYPAL, THE ALIBABA, THE QUICKBOOKS, AND THE BANK OF

14  AMERICA, ALL THOSE ARE DUPLICATIVE OF WHAT'S IN THE GENERAL

15  LEDGER.  THE GENERAL LEDGER CONTAINS THE DETAILS OF EVERY

16  SINGLE FINANCIAL TRANSACTION OF THE COMPANY --

17          THE COURT:  BUT, MR. WARD, DO YOU UNDERSTAND THAT

18  THEY'RE NOT ENTITLED -- IT'S NOT JUST THAT YOU GET ONE DOCUMENT

19  IN DISCOVERY THAT HAS A CERTAIN PIECE OF INFORMATION ON IT.  IF

20  THERE ARE KIND OF MORE THAN ONE DOCUMENT, YOU STILL CAN GET

21  THAT BECAUSE THAT IS ANOTHER SOURCE, AND THEY CAN COMPARE IT

22  AND MAKE SURE IT'S ACCURATE.  SO JUST BECAUSE INFORMATION IS

23  PRODUCED FROM ONE SOURCE DOES NOT NECESSARILY MEAN THAT YOU'RE

24  NOT REQUIRED TO PRODUCE IT FROM AN ADDITIONAL SOURCE.

25          MR. WARD:  FOR EXAMPLE, THEY SAID THEY DIDN'T GET
```

1    ZELLE.  WELL, THAT'S IN THE BANK OF AMERICA STUFF.  THERE ARE A

2    LOT OF ITEMS THAT THEY'RE TALKING ABOUT THAT THEY SAY THEY

3    DIDN'T GET BECAUSE THEY'RE SUBSUMED WITHIN OTHER DOCUMENTS THAT

4    THEY DID GET.  SO THEY REALLY HAVEN'T IDENTIFIED ANY AREA WHERE

5    THEY'VE BEEN PREJUDICED WHATSOEVER.

6            THE COURT:  OKAY.  THANK YOU.

7        NOW, JUST AS ANOTHER ISSUE, I WILL GET YOU AN ORDER

8    SHORTLY ON THIS, BUT IN TERMS OF KIND OF WHERE WE ARE OTHERWISE

9    IN THE CASE, IT IS MY UNDERSTANDING THAT DISCOVERY HAS CLOSED.

10   THE SANCTIONS ORDER WILL DEAL WITH SOME OF THESE ISSUES.  I

11   KNOW THAT THERE IS ANOTHER DEFENDANT WHO IS NOT PRESENT TODAY,

12   SO THEY'RE STILL IN THE CASE.  I KNOW THAT THEY'RE NOT HERE.

13   BUT, MR. MEROLLA, IN TERMS OF THAT OTHER DEFENDANT AND THE REST

14   OF THE CASE, I WOULD THINK THAT I JUST NEED TO ENTER AN ORDER,

15   TO THE EXTENT THERE'S GOING TO BE DISPOSITIVE MOTIONS, THAT

16   THEY NEED TO BE DONE WITHIN 30 DAYS, AND GET THE REST OF THE

17   CASE MOVING FORWARD, CERTAINLY AS IT RELATES TO THIS OTHER

18   DEFENDANT BECAUSE I ASSUME THAT DISCOVERY IS CLOSED AS TO THEM.

19   DO YOU WANT TO PROVIDE ME ANYMORE INFORMATION ABOUT THE STATUS

20   OF THE REST OF THE CASE?

21           MR. MEROLLA:  UNFORTUNATELY, YES.  SO WE HAVE YET TO

22   TAKE THEIR DEPOSITION.  YOU ORDERED -- REMEMBER THE 59-POUND

23   BOX OF DOCUMENTS.  THEIR COUNSEL -- THEY -- AFTER ONE OF YOUR

24   ORDERS REGARDING THIS MOTION FOR SANCTIONS, THEY SUBSTITUTED

25   COUNSEL -- NO.  THEY ENTERED COUNSEL.  I BELIEVE IT WAS HEATHER

```
 1   SHARP.  HEATHER SHARP ENTERED AN APPEARANCE, AND THEN I WAS
 2   TRYING TO COORDINATE THEIR DEPOSITION, COVID HIT, AND
 3   REPRESENTATIONS WERE MADE THAT MR. HUDDA WAS AT HIGH RISK OR,
 4   YOU KNOW, HAD SOMETHING ELSE GOING ON AND THAT WAS FINE AND,
 5   YOU KNOW, CAN YOU GIVE ME SOME DATES FOR DEPOSITION.  NO.  I'LL
 6   GIVE IT TO YOU IN A COUPLE MONTHS, IN A COUPLE MONTHS, A COUPLE
 7   MONTHS.  HEATHER SHARP STEPPED OUT.  RACHEL GAGE DID A
 8   SUBSTITUTION.  IN TALKING TO HER, THEY SAID -- I THINK BEFORE
 9   HEATHER, MS. SHARP STEPPED OUT, SAID, I'LL GIVE YOU -- YOU
10   KNOW, WE'LL LOOK FOR DATES IN MAY OR JUNE.  THOSE NEVER
11   HAPPENED.  I REACHED OUT TO MS. GAGE, I MEAN, TWO, THREE WEEKS
12   AGO, SPOKE TO HER ON THE PHONE, SAID, YOU KNOW, WE STILL NEED
13   TO TAKE THE DEPOSITION, YOU NEED TO GIVE ME DATES.  THEY'VE
14   NEVER GIVEN ME A DATE OTHER THAN THAT ONE THAT WE NOTICED, AND
15   THEN COVID HIT AND THEN THERE'S NO SHOW.  AND HERE WE ARE.  I
16   SAID, WELL, LOOK, I HAVE A FEELING THAT JUDGE MAY'S GOING TO
17   ASK ME, YOU KNOW, WHAT THE STATUS, YOU KNOW, GLOBALLY IS GOING
18   ON.  AND WE STILL WANT TO TAKE MR. HUDDA'S CONTINUED DEPOSITION
19   ON THE 59-POUND, YOU KNOW, BOX OF DOCUMENTS.  SHE DIDN'T GET
20   BACK TO ME PRIOR TO TODAY.  SO IN TERMS OF ALL THAT, I THINK IN
21   TERMS OF SUMMARY JUDGMENT STUFF, I THINK -- I THINK STAR DID
22   FILE -- I MEAN, PEOPLE -- YOU KNOW, YOU HAD YOUR DEADLINES ON
23   SUMMARY JUDGMENT.  SO I DON'T THINK, DEPENDING ON, YOU KNOW,
24   WHAT -- HOWEVER YOU RESOLVE THIS AND WHERE WE'RE AT, I THINK
25   WE'RE PAST THAT.  I THINK -- I NEED TO -- I DO WANT TO TAKE
```

```
 1    THEIR DEPOSITION.  AND SO, YOU KNOW, IF YOU'RE OKAY WITH, YOU

 2    KNOW, ALL THIS -- I MEAN, IF YOU'RE UPSET WITH ME WITH ON NOT

 3    ACTUALLY GETTING THIS DEPOSITION DONE, I'LL ADDRESS IT, BUT I

 4    WOULD LIKE, YOU KNOW, MAYBE --

 5            THE COURT:  I JUST WANT TO KNOW WHERE WE ARE.

 6            MR. MEROLLA:  RIGHT.

 7            THE COURT:  YOU'RE JUST SAYING THAT THERE'S -- FROM

 8    YOUR PERSPECTIVE -- I KNOW I NEED TO TALK TO THEM, BUT FROM

 9    YOUR PERSPECTIVE THE ONLY THING LEFT IN DISCOVERY AS IT RELATES

10    TO THEM IS THIS DEPOSITION.

11            MR. MEROLLA:  CORRECT.  WE'VE ASKED FOR

12    SUPPLEMENTATION BECAUSE IT'S BEEN, LIKE, NINE MONTHS SINCE THE

13    LAST ROUND OF FINANCIALS.  WE ALSO DID THAT OF BIJANI

14    DEFENDANTS.  WE GOT SOME E-MAIL REPRESENTATION THAT, WE'LL LOOK

15    INTO IT.  THOSE ARE ABOUT THREE, FOUR MONTHS AGO.  BUT WITH

16    RESPECT TO STAR, WE WANT TO TAKE THEIR DEPOSITION AND WE'D LIKE

17    FOR THEM TO SUPPLEMENT THE DOCUMENT PRODUCTION, WHICH I'VE

18    NEVER BEEN TOLD, WE'RE NOT GOING TO DO IT.  IT'S, YOU KNOW,

19    MR. HUDDA IS VERY BUSY AND ALL THAT KIND OF STUFF.  SO IN TERMS

20    OF WHAT MY ASK OF YOU WOULD BE, IS TO SAY THIS DEPOSITION NEEDS

21    TO TAKE PLACE BY, I DON'T KNOW, LABOR DAY.  IT'S, YOU KNOW,

22    SUMMER TIME.  PEOPLE ARE -- YOU KNOW, MAYBE END OF AUGUST OR

23    SOMETHING, OR, YOU KNOW, IF YOU WANT TO SAY, YOU KNOW, END OF

24    JULY, I'LL DO IT.  I'M FINE.  I JUST KNOW, YOU KNOW, PEOPLE

25    TRAVEL AND ALL THAT --
```

```
 1              THE COURT:  NO.  THAT'S FINE.  I JUST NEED TO KNOW
 2   WHAT WAS LEFT.
 3              MR. MEROLLA:  THAT'S IT.
 4              THE COURT:  OKAY.
 5              MR. MEROLLA:  THAT'S ALL THAT'S LEFT, IS TO TAKE
 6   MR. HUDDA'S DEPOSITION, AND THEN WE DO HAVE SOME -- WHAT IS IT,
 7   YOU KNOW, 26(G), WHATEVER SUPPLEMENTATION REQUESTS FOR
 8   FINANCIAL INFORMATION THAT -- YOU KNOW, FOR BOTH BIJANI
 9   DEFENDANTS AND MR. HUDDA, STAR IMPORTERS.  WE HAVEN'T GOTTEN
10   THAT YET.  BUT IN TERMS FOR YOU TO GET ON YOUR TRIAL CALENDAR
11   AND ALL THAT, I WOULD LIKE, YOU KNOW, A FAR OUT DATE TO GET
12   THAT DEPOSITION DONE.
13              THE COURT:  OKAY.
14              MR. MEROLLA:  AND THAT'S IT.  AND WE DON'T PLAN ON
15   FILING ANY OTHER DISPOSITIVE MOTIONS.  WE THINK THERE NEEDS TO
16   BE A TRIAL AND WE -- BUT WE'D LIKE TO GET THAT HUDDA DEPOSITION
17   COMPLETED.
18              THE COURT:  OKAY.  MR. WARD.
19              MR. WARD:  YEAH, IF I MAY, YOUR HONOR.  SINCE SMITH,
20   GAMBRELL & RUSSELL LEFT THE CASE, WE HAVE NOT RECEIVED
21   SUPPLEMENTATION OR UPDATING FROM THE PLAINTIFF AND THEIR
22   DISCOVERY, AND WE WOULD LIKE TO HAVE THEM DO THAT.
23              THE COURT:  OKAY.  SO IT SOUNDS LIKE EVERYBODY --
24   THERE'S SOME OUTSTANDING REQUESTS FOR EVERYONE TO SUPPLEMENT
25   THEIR DISCOVERY.  WE HAVE THIS DEPOSITION THAT NEEDS TO BE
```

```
 1    TAKEN.  AND THEN I'LL GET WITH -- AT LEAST IN THE ORDER TRY TO
 2    FIGURE OUT IF THERE'S ANYTHING ELSE THAT STAR NEEDS TO BE DONE
 3    SO THAT WE CAN SET A SCHEDULING ORDER TO GET EVERYTHING WRAPPED
 4    UP ONE WAY OR THE OTHER BECAUSE THE DISCOVERY ISSUES HAVE
 5    DRAGGED THE CASE OUT, BUT, AS I ALWAYS SAY, AT SOME POINT THIS
 6    CASE WILL END, THEY ALL DO, EVEN THE LONGEST ONES DO.  AND
 7    IT'LL EITHER END BY -- NO MATTER WHAT HAPPENS, THERE HAS TO BE
 8    A TRIAL ON SOME OF THESE ISSUES, IT SOUNDS LIKE.  CERTAINLY
 9    THERE'S A POTENTIAL FOR THE SETTLEMENT AT ANY POINT, BUT I KNOW
10    THAT Y'ALL HAVE BEEN UNSUCCESSFUL IN THE PAST ABOUT TALKING
11    ABOUT THAT.  BUT AT SOME POINT THIS ENDS.  AND I'LL GET A
12    SCHEDULE IN PLACE SO THAT WE CAN HAVE A FIRM DATE FOR CLOSURE
13    FOR EVERYONE ON THIS ONE WAY OR THE OTHER AND GET IT WRAPPED
14    UP.  IT'S JUST TAKEN A LONG TIME.  IN FACT I THINK BACK AT THE
15    FIRST PRELIMINARY INJUNCTION HEARING -- AND I DON'T EVEN KNOW
16    WHEN THAT WAS.  THAT SEEMS LIKE, MAYBE, FOUR YEARS AGO?  YEAH.
17    SO THIS CASE HAS REQUIRED A LOT OF ATTENTION AND IT SOUNDS LIKE
18    IT WILL NEED A LOT MORE GOING FORWARD, BUT AT SOME POINT WE'LL
19    GET A TRIAL AND WE'LL JUST GET THIS ALL RESOLVED ONE WAY OR THE
20    OTHER.  I'LL GET AN ORDER TO YOU SHORTLY.  I WANT TO DO IT
21    WHILE MY MEMORY IS GOOD IN TERMS OF THE HEARING, AND THEN WE'LL
22    JUST GO FROM THERE.
23        YES, MR. MEROLLA.
24        MR. MEROLLA:  ONE OTHER THING.  WE -- REGARDING THE
25    WHOLE DEPOSITION THING THAT HAPPENED WHERE MY CLIENT SHOWED UP,
```

1   WE WERE WAITING, BUT A LOT OF E-MAIL COMMUNICATIONS WENT TO

2   MS. POLEY.  AND BY E-MAIL I REQUESTED, YOU KNOW, MAKE SOME

3   APPLICATION FOR SANCTIONS UNDER THE DEPOSITION STATUTE ABOUT

4   APPEARING AT A NOTICED DEPOSITION AND THAT SORT OF THING.  AND

5   BACK IN APRIL MS. POLEY SAID THAT I COULD BRING UP THE REQUEST

6   FOR FEES REGARDING THE DEPOSITION AT THE UPCOMING SANCTIONS

7   HEARING, NO DATE SET.  SO I JUST WANTED TO MENTION THAT, YOU

8   KNOW.  I'M GATHERING THAT YOU DON'T WANT TO HEAR ANY OF THAT,

9   BUT WE DO HAVE THAT REQUEST IN TERMS OF THE TIME AND EXPENSE

10  THAT WE WENT INTO RESPONDING TO THAT DEPOSITION SUBPOENA.  AND

11  WE DETAILED IT IN AN E-MAIL COMMUNICATION.  I DON'T KNOW IF

12  THE -- IF YOU'RE FAMILIAR WITH ALL THAT, BUT WE WOULD WANT TO

13  HAVE THAT APPLICATION.  MAYBE IT'S PART OF THIS ORDER, MAYBE

14  IT'S NOT.

15              THE COURT:  OKAY.

16              MR. MEROLLA:  BUT THAT'S OUT THERE.

17              THE COURT:  OKAY.  MR. WARD.

18              MR. WARD:  YOUR HONOR, WE OPPOSE THAT BECAUSE THEY

19  STATED THEY WOULD NOT COMPLY WITH OUR SUBPOENA.  AND THE FACT

20  THAT BEHIND OUR BACK THEY CHOSE TO SHOW UP ANYWAY, THAT'S ON

21  THEM, NOT US, BECAUSE THEY SAID THEY WOULDN'T SHOW UP.

22              THE COURT:  OKAY.

23              MR. WARD:  SO...

24              THE COURT:  WELL, I'LL TAKE A LOOK AT THAT, GET YOU

25  AN ORDER.  AND THEN, LIKE I SAID, ONE WAY OR THE OTHER WE ARE

1    GOING TO MOVE FORWARD ON THIS AND WE'LL GET IT RESOLVED.  SO

2    THANK YOU.  AND, WITH THAT, WE ARE ADJOURNED.

3                    (PROCEEDINGS ADJOURNED.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

        I, MONTRELL VANN, RPR, RMR, RDR, CRR, OFFICIAL COURT

REPORTER FOR THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN

DISTRICT OF GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING

42 PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE

THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE

MATTER THEREIN STATED.

        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE

19TH DAY OF JULY 2021.


                              /S/ MONTRELL VANN
                              MONTRELL VANN, RPR, RMR, RDR, CRR
                              OFFICIAL COURT REPORTER
                              UNITED STATES DISTRICT COURT


        UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT