# EXHIBIT 5

**Borland, Elizabeth**

**From:** Robert M Ward <rward@bmwiplaw.com>
**Sent:** Tuesday, August 14, 2018 6:36 PM
**To:** Borland, Elizabeth
**Cc:** Lunsford, Rodgers
**Subject:** Re: robert ward shared "Photos of Green Background Incense boxes" with you

Elizabeth (and Rodgers, who I trust is enjoying his summer vacation),

Thank you for the diligence and helpfulness of your most analytical response.

Nonetheless, and pursuant to my respective duties to my client and to the Court, I will be perfectly candid with Ms. Noorani. Based on her continuing course of intentionally injurious conduct directed toward my client-- there is no present possibility that the Defendants will make any unilateral concessions regarding the alleged "green color" of their packaging – NONE.

For literally months now, we have tried to be polite, kind and even forgiving. But, however, our kindnesses and gentlemanly treatment of this woman Noorani have been construed by her as weaknesses -- to be exploited. Ms. Noorani will find that she is again mistaken.

The time is past for any reliance upon any semblance of good-will, or any form of trust in Ms. Noorani's *bona fides*. She has shown that she has none. **Ms. Noorani will give written warranties that she will cease and desist from her concerted course of malicious conduct – or will have suitable pleadings, discovery and an adjudication, that we trust will result in an injunction and an award of substantial damages against Ms. Noorani.**

And, just so we are straight on this, the Judge did not think much of Ms. Noorani's over-reaching arguments about "the color green", either – and even though the Defendants at that time did focus upon other packaging differences, and thus did not need to take an aggressive shot at Noorani's (albeit pretentious) claims to some sort of imperial rights in and to "the color green". Hence, I hate to be the one to break the news to Ms. Noorani, but the Emperor(ess) here truly has no clothes – i.e., the Noorani product is not Owens-Cornings "Pink Panther" fiber glass, or Equal's little blue packets.

I do notice that your most helpful Comments did not address the extensive third-party usages in the marketplace of "the color green" on packaging for incense products – and, that is (likely) because there is nothing left to say. Specifically, there is complete, exhaustive use of this highly functional color in this marketing environment. Wherefore, I strongly suggest that Noorani give-it-up on this point – and, let's move on.

And, another point that the imperial Ms. Noorani should consider is whether she has any rights in and to using other colors (e.g., red, pink, purple, etc.) on individual packages or

1

labels re "flavors". Today, I have also produced via DropBox several examples of third-party usages on this, as well. Hence, she will lose on this issue, too.

In the Public Interest, I intend <u>vigorously</u> to go-after any claim by Noorani in and/or to any alleged exclusivity re the color green. Based on the breadth of the various shades of the color green as used in the trade, that means that **<u>any</u>** shade of green whatsoever is open for **<u>anyone</u>** in the marketplace to use.

[[BTW, I also notice that Noorani's shade of green is not-at-all similar to AB's unique smoke shading, but this is on the "down-steam" issue of non-infringement, which is irrelevant where (as here) Noorani has no rights ab initio, to any shape of green.]]

And, as we know, this is what the Court had to say about Noorani's erroneous arguments re the respective packaging(s) that include theirt-own variations on the color green.

> Plaintiff argues that the Modified Incense Display Dress "retains two of the three most prominent elements of Plaintiff's Incense Box Trade Dress: **<u>the green gradient background and the light reflective rainbow effect.</u>**" Dkt. No. [35-3] at 5. However, while Defendants' Modified Incense Display Dress retains some similar elements, these similar elements do not render the overall impression of their Modified Incense Display Dress similar to Plaintiff's— especially since **<u>the new stripes dominate</u>** the look of the redesigned box. See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992) (noting that "[d]espite the similarity between certain aspects of the two trade dresses," including the "color scheme," "when taken as a whole . . . [the two trade dresses] are not similar in any manner that is likely to cause consumer confusion.").[8] Because the designs are not very similar, this factors cuts against likelihood of confusion.
>
> \*\*\*
>
> Thus, Plaintiff has not demonstrated a substantial likelihood of success on the merits of its trade dress claim as to the Modified Incense Display Dress. **<u>Accordingly, Plaintiff's Motion to Amend the Preliminary Injunction is DENIED as to Defendants' Modified Incense Display Dress.</u>**

Candidly, I am not even sure that the Judge would give your over-reaching client Ms. Noorani a trial on this very clearly determined issue. Noorani can argue all that she wants to that the Judge is somehow "wrong", and that a jury (assuming arguendo that it got to the jury) as instructed by the Court, might think differently, but how often does this happen??  Indeed, I would expect that the Jurors would be angered by Noorani's inequitable and selfish arguments– based on the third-party evidence, alone.

Hence, it is now "show-time" for Ms. Noorani.  Wherefore, she will either "put-up", or "shut-up". The Defendants are through with talking, talking and talking --  while they and their products are being slandered by Ms. Noorani in the Marketplace.  And, I do have a relatively open trial-schedule.

2

You, Rodgers and other Members of your great Firm are among the best IP trial lawyers in Georgia ( and/or elsewhere) – and, so Bob Ward, as just a "solo-practitioner" does humbly look forward to the opportunity to determine these issues – fully and fairly – in front of a jury of the party's peers.

Of course, and it goes without stating, that none of Ms. Noorani's negative behavior (and, of which there is a lot) is to be attributed to her distinguished and most helpful counsel.

Best wishes,

Bob

> On Aug 14, 2018, at 4:33 PM, Borland, Elizabeth <EBORLAND@sgrlaw.com> wrote:
>
> Thank you for your email. We will discuss with our client. However, we are confused about your representations about colors. Because lighting and quality of photographs can vary, we believe it would be most helpful to identify colors by Pantone #.
>
> We are aware of two basic versions of packaging that your client has used:
>
> The first version ("Version 1") is the version that was originally accused in this case, shown below:
>
> <image001.png>
>
> The second version is the modified version ("Version 2"), which your client came out with in around July 2017:
>
> <image002.png>
>
> It is our understanding that Version 2 is the version that your client continues to market and sell, and that you showed us Version 2 in our conference on July 1. Version 2 does not primarily use Pantone 7722 as the background color, but uses a primary background color virtually identical to the primary background color used in version 1. It would be helpful if your client would identify the Pantone colors used in the background of each version for specificity.
>
> We had understood that your client was going to change the background color to one that was primarily Pantone 7722, but that has not occurred. However, your letter seems to suggest that version 2 shown above (and which your client has been using since July 2017) *is* primarily Pantone 7722. Is that your position?
>
> We look forward to your response.
>
> Sincerely,
>
> Elizabeth Borland

3